752 A.2d 832 (2000)
332 N.J. Super. 76
Robert WERNER and Diane Werner, his wife, Plaintiffs-Appellants,
v.
Jerold P. LATHAM, Angelo F. Agosto, Frank D. Petolino, and Michael Petolino, Defendants, and
Oxford Health Plans, Inc., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 2000.
Decided June 15, 2000.
Roger J. Desiderio, West Orange, for plaintiffs-appellants (Bendit Weinstock, attorneys; Sherri Davis Fowler, on the brief).
Scott S. Levinson, for defendant-respondent.
Before Judges PRESSLER, KIMMELMAN and CIANCIA.
*833 The opinion of the court was delivered by PRESSLER, P.J.A.D.
In Perreira v. Rediger, 330 N.J.Super. 455, 750 A.2d 126 (App.Div.2000), we held that the collateral source rule of N.J.S.A. 2A:15-97 does not bar the health insurer of the plaintiff in a non-automobile,[1] personal-injury negligence action from asserting a claim of reimbursement from the plaintiff or subrogation against the tortfeasor. Both in Perreira and in the consolidated companion case of Achor v. Oxford Health Plans, Inc. which we also then decided, there was no question but that the insurer's remedy would not affect the plaintiffs' right to a full recovery from the tortfeasor, that is, the fair value of their respective personal injury claim less the medical expenses that the health insurer had paid.[2] Indeed, we emphasized in that opinion that our conceptual predicate was to assure that while plaintiffs are not, by virtue of the collateral source rule, entitled to recovery of their medical expenses both from the tortfeasor and from their own health insurers, they must nevertheless be assured, with respect to their other damage claims, of "the full extent of the single recovery to which they are entitled...." Perreira, supra, 330 N.J.Super. at 466-467, 750 A.2d 126.
What we did not address in Perreira and must address on this appeal is the situation in which, for a variety of reasons, the settlement between the plaintiff and the tortfeasor, reasonable under the circumstances, is nevertheless insufficient to provide plaintiff with a full recovery. We hold that in such circumstances, the health insurer's reimbursement rights must yield to the plaintiff's right to full recovery.
Recitation of the undisputed facts here is itself sufficient to explain our holding. Plaintiff Robert Werner, whose wife Diane Werner sues per quod, sustained catastrophic injuries in an accident in which his motorcycle was involved in a collision involving three cars. Defendant Jerold P. Latham was the owner and operator of one of the cars, defendant Angelo F. Agosto was the owner and operator of the second car, and defendant Frank D. Petolino and defendant Michael A. Petolino were, respectively, the owner and operator of the third car. Suffice it to say that during the six months following the accident, plaintiff was hospitalized at both University Hospital in Newark and the Kessler Institute for Rehabilitation in West Orange and has since continued as an outpatient at Kessler. Because plaintiff was riding a motorcycle at the time of the accident, he was not entitled to personal injury protection benefits. N.J.S.A. 39:6A-4. Consequently, his health insurer, defendant Oxford Health Plans, Inc., paid his medical bills which amounted, at least when this matter was heard below, to about $510,000. Plaintiff's multiple disabilities include partial paralysis of all four limbs, and his working lifehe was employed as a printerappears to be over. He was 43 years old at the time of the accident.
Plaintiff brought suit against the tortfeasors and, by amended complaint, joined Oxford seeking a declaratory judgment ruling that under the facts of this case Oxford had no right, as it had claimed, to reimbursement out of any recovery plaintiff would obtain from the tortfeasors of the medical expenses it had paid on plaintiff's *834 behalf. Plaintiff moved for summary judgment on the declaratory judgment count of the complaint. The motion was denied, the judge certified the ensuing order as final pursuant to R. 4:42-2, and plaintiff appealed. By our opinion under Docket No. A-3095-97T5, we dismissed the appeal as improvidently certified. We did, however, note in our review of the facts that the aggregate insurance coverage available from the tortfeasors was $600,000 and that any judgment against them in excess thereof would almost certainly be uncollectible. Hence the medical expenses paid by Oxford, then about $510,000 and growing, would be likely to consume almost the entire potential recovery.
After the matter was returned to the trial court, plaintiff renewed his motion for summary judgment and Oxford crossmoved. Before the disposition of these motions, plaintiff negotiated with the tortfeasors' carriers and also with Oxford with respect to its reimbursement claim. Plaintiff was able to obtain an aggregate settlement of $578,137.08, a figure just under the coverage limits. He also entered into an agreement with Oxford whereby $75,000 of the settlement proceeds was placed in escrow pending a determination of Oxford's right to reimbursement, and, if it was adjudicated to have that right, it would be paid not only the escrowed sum but would also have a lien for the balance of its medical payments on any recovery plaintiff would obtain in his then pending malpractice action against the Kessler Institute. The trial judge, who was apprised of these arrangements, then denied plaintiff's motion and granted Oxford's, ruling that Oxford had a right to reimbursement under its policy. Plaintiff appeals.
As we held in Perreira, the health carrier's contractual arrangement with its policyholder, the personal-injury plaintiff, is not dispositive when the case goes to judgment. The collateral source statute, N.J.S.A. 2A:15-97 controls. The assumption is that all the medical proofs will have gone to the jury and that the jury, in its verdict, will fairly compensate the plaintiff for that as well as other components of the damages claim. The problem arises when the plaintiff and the tortfeasor enter into a settlement disposing of the negligence claims, and the health insurer, relying on its contractual right of reimbursement, seeks to be paid its medical disbursements out of the proceeds of settlement. If, under all the circumstances, the settlement amount fairly compensates plaintiff for all his damages, including medical payments, then obviously the health insurer is entitled to reimbursement and the plaintiff will have nevertheless received a full single recovery. We address hereafter what we mean by a full and fair settlement. But what if, as here, the settlement that can reasonably be reached does not reflect the fair value of plaintiff's damages but is, rather, dictated by the tortfeasor's inadequate coverage or other considerations reasonably inducing plaintiff to accept less than full value? Is the health insurer still entitled to reimbursement?
To answer these questions, we turn to the health insurance contract. This policy provides as follows:
Upon providing care for such injury or sickness pursuant to the terms of this agreement, Health Plan shall be permitted to recover the reasonable value of such care for injury or sickness when payment is made directly to the Member in third party settlements or satisfied judgments.
The key to the proper interpretation of this language, as we see it, is the phrase "when payment is made directly to the Member in third party settlements." Obviously the payment intended to be referred to by this phrase is not any and every payment made to the policyholder by any third party for any reason and based on any kind of cause of action seeking monetary relief on any basis. Rather, we think it plain that the payment referred to is intended to encompass only payment by a third party representing the cost of *835 "care for such injury or sickness" for which the carrier has already paid. And since this is the clear import of the language, it cannot be reasonably extended to encompass other elements of personal injury damage for which the plaintiff is paid, including, for example, pain and suffering, future disability, loss of income and future income loss. In sum, we read the contract language as essentially equating the health insurer's right to reimbursement with the collateral source rule. That is to say, whether by judgment or settlement a plaintiff is not entitled to retain payment of medical expenses by the tortfeasor that his carrier has already covered. By the same token, the health carrier's right of reimbursement is limited to that portion of the judgment or settlement reasonably attributable to medical expenses only.
We are satisfied that this reading of the reimbursement provision of the contract is consistent with the basic tort-recovery principle that while a plaintiff is not entitled to a double recovery of medical expenses, nevertheless the plaintiff is entitled to be made whole by a full single recovery.
We addressed that principle in a somewhat analogous context in Charnecky v. American Reliance Ins., 249 N.J.Super. 91, 592 A.2d 17 (App.Div. 1991) aff'd. o.b., 127 N.J. 188, 603 A.2d 512 (1992), in which we considered the question of whether a workers' compensation lien would attach not only to the negligence recovery against a third party but also to plaintiff's recovery from his own automobile carrier under uninsured motorist (UM) coverage. The issue arose as follows. In Midland Ins. Co. v. Colatrella, 102 N.J. 612, 510 A.2d 30 (1986), the Supreme Court held that the workers' compensation lien of $9,270.52 attached to plaintiff's UM recovery of $27,500. The Court expressly declined to "reach the more difficult question whether the workers' compensation lien should attach when the uninsured motorist coverage is less than the full amount of plaintiff's damages." Id. at 619, 510 A.2d 30. We had, however, to reach that more difficult question in Charnecky. There, the plaintiff had been seriously injured in a workrelated automobile accident, resulting in an award of workers' compensation benefits of $158,819.59. He settled his UM claim against his own carrier for the policy limit of $100,000. The workers' compensation carrier claimed the entire amount of the UM recovery by way of satisfaction of its lien, and plaintiff brought the declaratory judgment action then before us. The trial court ruled in favor of the compensation carrier, and we reversed. Charnecky, supra, 249 N.J.Super. at 93, 592 A.2d 17.
Our reasoning in Charnecky is fully applicable here. We first noted that in Midland Ins. Co. v. Colatrella, it had been established that Colatrella's UM recovery duplicated his workers' compensation recovery. Charnecky, supra, 249 N.J.Super. at 94, 592 A.2d 17. But, as we explained, a different result must follow if "an injured party's combined compensation and UM recoveries do not indemnify him in full for his loss...." Ibid. This is so, we held, because the reimbursement remedy allowed in Midland Ins. Co. to "forestall a double recovery is inappropriate and unjust" if it prevents plaintiff from being made whole. Ibid. We reached that conclusion in reliance on the equitable principle "that `the right of subrogation does not arise until the injured party has been made whole.' " Ibid. (quoting Culver v. Ins. Co. of North America, 221 N.J.Super. 493, 500, 535 A.2d 15 (App.Div.1987), rev'd on other grounds, 115 N.J. 451, 559 A.2d 400 (1989)). We thus held that the compensation lien would attach only to the extent that plaintiff's UM recovery, together with the compensation benefits he received, exceeds "the full amount of plaintiff's damages," and we remanded to the trial court for a determination of what the full amount of plaintiff's damages were. Id. at 96, 592 A.2d 17.
Charnecky provides the blueprint for resolution here as well. We think it plain that the $600,000 in available coverage was *836 unlikely to compensate this catastrophically injured plaintiff for the full amount of his damages considering his pain and suffering, disability, and loss of income. To permit the health carrier to assert a reimbursement right against the total settlement proceeds would then leave plaintiff virtually uncompensated despite his tort recovery. Such a result, as we held in Charnecky, would be unfair, inappropriate, and contrary to relevant and impelling equitable principles.[3] The rule of health carrier reimbursement that ineluctably emerges is that the carrier is entitled to reimbursement of its medical payments only to the extent that the settlement proceeds exceed the full amount of plaintiff's damages for all damage claims other than medical payments.
We are aware that Charnecky was later overruled by Frazier v. New Jersey Mfrs. Ins., 142 N.J. 590, 605, 667 A.2d 670 (1995). But as we read the Frazier opinion, the basis of the Supreme Court's disagreement was its view that UM proceeds stand in the place of and are conceptually no different from a recovery directly against the tortfeasor. Consequently, the Frazier court, functionally equating UM proceeds with the tort recovery, concluded that the same statutory mandate of the workers' compensation lien must apply to both. Here, however, since the collateral source statute speaks only to judgments and not to settlements, we are not dealing with a statutory right of reimbursement, but rather with a contractual right subject to construction by the court in accord with general principles of insurance contract interpretation, equitable principles and public policy. In that context, we are satisfied that both the reasoning and the result reached in Charnecky are fully applicable to our analysis here.
We appreciate that there may be practical problems in implementing our holding. The first is the mechanism making the determination of what sum fairly represents the full amount of plaintiff's damages if that sum is in dispute and the health insurer, who must bear the burden of persuasion, asserts that the proceeds are adequate to permit reimbursement. If the health insurer's policy contains a mandatory arbitration clause, then this issue would be subject to contractual arbitration. If there is no such provision, the issue must be determined by the trial court as we had concluded in Charnecky. While Charnecky does not provide much in the way of guidelines, we are satisfied that the calculation of a fair amount of damages is a matter well within the ken of trial judges and is a function routinely performed by them. It is an aspect of every settlement conference and a required component of every "friendly" proceeding pursuant to R. 4:44. This is, moreover, clearly a determination to be reached by the judge, not a jury, and we leave to the experience of the trial judge the discretion as to how to proceed when the question of whether the settlement proceeds are adequate is in dispute.
The summary judgment appealed from is reversed, and we remand for further proceedings consistent with this opinion.
NOTES
[1] By "non-automobile," we mean a cause of action not providing the plaintiff with personal injury protection benefits under N.J.S.A. 39:6A-4.
[2] In Achor, the release given by plaintiff to the tortfeasor expressly provided that the settlement sum was for pain and suffering only, leaving the health carrier free to prosecute a subrogation claim again the tortfeasor for the medical expenses. In Perreira, the details of the settlement agreement between plaintiffs and the tortfeasors had not been disclosed, but no argument had ever been made that affording the health carrier a right of reimbursement would leave plaintiffs without a single full recovery.
[3] The situation may, of course, be radically altered if plaintiff obtains a recovery in his malpractice action against the Kessler Institute. If he does so by judgment, the collateral source rule as we have interpreted its operation in Perreira will take care of the health carrier and still leave plaintiff whole. If by settlement, then the full amount of plaintiff's damages, less medical expenses, should be considered against the combined total of the settlement proceeds obtained in both law suits, and if there is an excess, the health carrier will be entitled to it by way of reimbursement.