795 A.2d 907 (2002)
350 N.J. Super. 441
Thomas O'BRIEN, Plaintiff-Appellant,
v.
TWO WEST HANOVER COMPANY and Lorraine Benkendorf d/b/a Benkendorf Electrolysis, Defendants, and
Local 464A UFCW Group Reimbursement Welfare Fund, Defendant/Intervenor-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 25, 2002.
Decided April 30, 2002.
*908 Kopelson & Westreich, attorneys for appellant (Robert Westreich, on the brief).
Mizzone, Filko & Mizzone, attorneys for respondent (Elissa Mizzone Testa, of counsel and on the brief).
Before Judges PETRELLA, KESTIN, and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
Plaintiff Thomas O'Brien appeals from an order granting the motion of intervenor Local 464A UFCW Group Reimbursement Welfare Fund (Fund) to enforce its claimed right of subrogation. Plaintiff initially sued defendants Two West Hanover Company and Lorraine Benkendorf, doing business as Benkendorf Electrolysis, for personal injuries. The Fund is a union benefits plan which provides medical, surgical, and hospital benefits to participants. After plaintiff's personal injury claim was settled, the Fund moved to intervene for the purpose of enforcing its claimed lien for medical payments it had expended on plaintiff's behalf. While plaintiff's procedural history does not provide a full explanation, it appears the parties agreed to enter into a stipulation of facts they believed relevant to allow the judge to make a legal determination of the Fund's claim.
The parties stipulated that the Fund's plan "is governed by ERISA." The stipulation also provided as follows:
The Plan provides that a member must first seek payment of medical expenses from "other sources," including the proceeds of any lawsuit, before payment is authorized by the Plan.
The Plan provides expressly that the payments from "other sources" include only payments intended as compensation for medical expenses[,] not injuries:
If you have been involved in any form of ... accident and can be paid for your medical and surgical expenses, you must seek reimbursement...[.]
If you have ... any other source from which you can receive ... damages which would include a claim for recovery of costs of medical hospital care... [you must pursue such source.]
So that the members will understand, this Plan has been adopted for the Protection of our Members to make *909 certain that they will be made whole and not be compelled to pay out of their own pockets, whenever possible, for medical and hospital care.
Plaintiff executed a subrogation agreement, which assigned "to Local 464A and United of Omaha the right to receive and collect" the proceeds of any funds received, or to be received, as a result of litigation. The agreement further provided that its purpose was to reimburse the Fund for any and all expenses incurred as a result of payment of hospital, medical, and related bills on plaintiff's behalf.
The Fund paid medical benefits of $38,840 for plaintiff and asserted that its "lien," less a one-third attorney fee, was $25,906.33. The eighth paragraph of the stipulation reads as follows:
The underlying case was settled for $275,000.00, an amount that constituted less than full compensation to the Plaintiff for his injuries, which include a $360,000 wage loss and significant loss of function in his lower back. Plaintiff compromised his claim because his need for back surgery did not appear until more than two years after his slip and fall and there were, consequently, doubts about Defendants' liability. Although the Plan stipulates to the statements in this paragraph, it has no independent information bearing on the facts stipulated.
Relying upon Werner v. Latham, 332 N.J.Super. 76, 752 A.2d 832 (App.Div. 2000), plaintiff's attorney later advised the Fund that he would not pay any portion of its claim on the ground that the settlement did not provide full compensation to plaintiff for his injuries.[1] The motion judge concluded that the Employee Retirement and Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (1999), preempted New Jersey law and directed that the funds in dispute (which apparently had been placed in escrow) be paid to the Fund. Plaintiff appeals, contending that Werner required the judge to find that none of the funds received by him in settlement were subject to the Fund's claim for reimbursement. Because we conclude that the stipulation of facts was inadequate to allow the judge to make an informed decision, we are constrained to reverse and remand.
This case involves the interplay of ERISA, the collateral source rule, N.J.S.A. 2A: 15-97, and the impact, if any, of Werner upon those statutes.
N.J.S.A. 2A:15-97 provides as follows:
In any civil action brought for personal injury or death, ... if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.
N.J.S.A. 2A: 15-97 eliminates the possibility of double recovery by requiring a deduction "from any tort judgment the amount received by plaintiff from collateral sources (other than workers' compensation and life insurance) less any insurance *910 premiums plaintiff has paid." Perreira v. Rediger, 169 N.J. 399, 409, 778 A.2d 429 (2001). In reviewing the legislative history, the Court concluded that while the primary purpose of the statute was to disallow double recovery to plaintiffs, there was a secondary goal of containing spiraling automobile insurance costs. Id. at 409-410, 778 A.2d 429. In essence, the Legislature elected to benefit liability carriers by reducing the tort judgment by the amount of health care benefits received and left health insurers in the same position as they were prior to the enactment of the statute. Id. at 410-11, 778 A.2d 429. In other words, the burden of paying the medical expenses fell upon health insurers.
Notably, the statute is silent regarding a health insurer's rights to either subrogation or reimbursement. Id. at 409, 778 A.2d 429. Because the purpose of N.J.S.A. 2A:15-97 was to eliminate double recovery to plaintiffs and allocate "the benefit of what had previously been double recovery to the liability insurance industry," the Court further held that where the collateral source rule applies, the benefits provided by the health care insurer are subtracted from the judgment. Id. at 416, 778 A.2d 429. Thus, subrogation provisions in health care policies or plans "only apply to cases that do not involve the collateral source rule." Id. at 418, 778 A.2d 429. Hence, we must determine whether the collateral source rule applies.
In determining whether the collateral source rule applies, we must consider ERISA and its impact upon the collateral source rule. Three separate provisions of ERISA are pertinent. The first is 29 U.S.C. § 1144(a), commonly referred to as the preemption clause, which provides, in pertinent part, as follows:
Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....
The second is 29 U.S.C. § 1144(b)(2)(A), commonly referred to as the saving clause, which provides, in pertinent part, as follows:
Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
Finally, 29 U.S.C. § 1144(b)(2)(B), commonly referred to as the deemer clause, provides, in pertinent part, as follows:
Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [and] insurance contracts....
The United States Supreme Court has noted that "[t]he pre-emption clause is conspicuous for its breadth." FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L. Ed.2d 356, 364 (1990). Thus, if a State law relates to an employee benefit plan governed by ERISA, it is preempted. Ibid. However, except as provided in the deemer clause, the saving clause is the State's authority to enforce its laws if it regulates insurance. Ibid.
Nevertheless, under the deemer clause, an employee benefit plan governed by ERISA is not "`deemed' an insurance company, an insurer, or engaged in the business of insurance for the purpose of State laws [that purport to regulate] insurance companies or insurance contracts." Ibid.
The preemption clause is applied to avoid subjecting ERISA plans to a "patchwork scheme of regulation." Id. at 60, 111 *911 S.Ct. at 408, 112 L.Ed.2d at 365 (citation omitted). Rather, the preemption clause must "ensure that benefit plans will be governed by only a single set of regulations." Ibid. However, even if the regulation in question relates to ERISA, it is not preempted if the saving clause applies. Moreover, even in cases where the saving clause may apply, there is preemption if the deemer clause applies. Id. at 61, 111 S.Ct. at 409, 112 L.Ed.2d at 366. Ultimately, the Court concluded that the deemer clause exempts self-funded ERISA plans from State laws regulating insurance within the meaning of the saving clause. Id. at 65, 111 S.Ct. at 411, 112 L.Ed.2d at 369. Simply put, because a self-funded ERISA plan is not deemed an insurance company, it is unaffected by the saving clause and is relieved from any State laws that purport to regulate insurance. Id. at 61-64, 111 S.Ct. at 409-11, 112 L.Ed.2d at 366-68. By contrast, an employee benefit plan that is insured remains subject to State insurance regulations by virtue of the saving clause. Ibid. The ERISA plan is "bound by State insurance regulations insofar as they apply to the plan's insurer." Id. at 61, 111 S.Ct. at 409, 112 L.Ed.2d at 366. Stated another way, the "deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it." Id. at 64, 111 S.Ct. at 411, 112 L.Ed.2d at 368.
In FMC Corp., defendant was a member of an employee welfare benefit plan that was self-funded. Her daughter was injured in an automobile accident and instituted suit seeking recovery of the medical payments it had made on her behalf. Defendant resisted that application, contending that Pennsylvania's anti-subrogation statute precluded subrogation. The Supreme Court held that ERISA preempts the application of the anti-subrogation law and, therefore, the plan was entitled to reimbursement. Id. at 65, 111 S.Ct. at 411, 112 L.Ed.2d at 369. Given the breadth of the preemption clause and the United States Supreme Court's expansive interpretation of it, we have little doubt that ordinarily New Jersey's collateral source rule is also preempted by ERISA. See Danowski by Danowski v. United States, 924 F.Supp. 661, 672 (D.N.J.1996). To hold otherwise would subject multi-state health plans to a variety of different rules regarding collateral sources. This was not within the intendment of Congress. The collateral source rule, if applied to the Fund, relates to its plan. Thus, resolution of this appeal requires us to determine whether the collateral source rule is saved by the saving clause, as it purports to regulate insurance companies, or is affected by the deemer clause, which precludes a plan from being deemed an insurance company. The critical issue is, was the plan funded by insurance? Unfortunately, the stipulation provided by the parties does not answer that essential inquiry. Moreover, the stipulation refers not only to the Fund, but also refers to reimbursement of United of Omaha. We cannot determine from this record whether United of Omaha funds the plan or merely administers it. Accordingly, the present record does not permit an adequate resolution of this appeal. Hence, we reverse and remand.
In our view, the parties, as well as the motion judge, have taken a much too simplistic view of the complex, intricate questions involved. The fact that the plan may be covered by ERISA does not end the inquiry. Rather, it is the beginning point of the inquiry. By way of recapitulation, the collateral source rule relates to an employee benefit plan and, consequently, 29 U.S.C. § 1144(a), the preemption clause, applies. A law "relates to" an employee welfare plan if it has "a connection with or *912 reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490, 501 (1983). However, if the collateral source rule regulates insurance, as it does, ordinarily, under the saving clause, 29 U.S.C. § 1144(b)(2)(A), the collateral source rule is saved insofar as it regulates insurance companies. Nevertheless, even though the legislation is "saved" or preserved because it regulates insurance, as previously noted, an ERISA plan not funded by insurance is not "deemed" an insurance company for purposes of a State law "purporting to regulate insurance companies." FMC Corp., supra, 498 U.S. at 58, 111 S.Ct. at 407, 112 L.Ed.2d at 364. That is the effect of 29 U.S.C. § 1144(b)(2)(B), the deemer clause. Consequently, if the plan is not funded by insurance, it is entitled to the benefit of the preemption clause.
Because we must reverse and remand given our inability to determine from this record whether the plan is funded by insurance or merely administered by insurance, nevertheless, for the sake of completeness and for guidance of the parties upon remand, we discuss the implications of Werner, a non-ERISA case. There we held that if a settlement, although reasonable under the circumstances, is, for a variety of reasons, insufficient to provide plaintiff with a full recovery, "the health insurer's reimbursement rights must yield to plaintiff's right to a full recovery." Werner, supra, 332 N.J.Super. at 79, 752 A.2d 832. Plaintiff's right to a full recovery is sometimes referred to as the "make whole" doctrine. Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 280 (1st Cir.2000); Cagle v. Bruner, 112 F. 3d 1510, 1520-22 (11th Cir.1997); Cutting v. Jerome Foods, Inc., 993 F.2d 1293, 1297-98 (7th Cir.1993); Ludwig v. Farm Bureau Mut. Ins. Co., 393 N.W.2d 143, 144 (Iowa 1986). In Werner, we held that in those circumstances where the settlement "does not reflect the fair value of plaintiff's damages but is, rather, dictated by the tortfeasor's inadequate coverage or other considerations reasonably inducing plaintiff to accept less than full value," the health insurer is not entitled to reimbursement. Werner, supra, 332 N.J.Super. at 81-82, 752 A.2d 832.[2] Thus, we held that a health insurance "carrier is entitled to reimbursement of its medical payments only to the extent that the settlement proceeds exceed the full amount of plaintiff's damages for all damage claims other than medical payments." Id. at 84, 752 A.2d 832.
Here, plaintiff contends that the settlement was inadequate to provide full compensation to him for his injuries. He claims that he settled for less than full value of his claim because his need for back surgery did not become apparent until more than two years after the incident "and there were, consequently, doubts about [d]efendants' liability." Implicitly, he was concerned that he may not have been able to prove that the need for back surgery was related to the accident. In the stipulation, the Fund claimed it had *913 "no independent information bearing" on this issue. Relying upon Werner, plaintiff contends that the Fund did not prove that he had received adequate compensation and, therefore, its claim for reimbursement should have been denied.
On this appeal, in essence, plaintiff contends that the plain language of the plan only entitles the Fund to reimbursement from those funds received as compensation for medical expenses, but not for injuries. He further contends that the Fund has not proven that he "received compensation beyond the fair value of his injuries and non-medical expenses." By contrast, in its appellate brief, the Fund claims that "ERISA expressly preempts all State law relating to any benefit plan." Additionally, the Fund notes, unlike in Werner, its "lien ... is only a fraction of the settlement amount." Thus, it contends that because "the settlement amount fairly compensates plaintiff for all his damages, including medical payments, then obviously the health insurer is entitled to reimbursement." See Werner, supra, 332 N.J.Super. at 81, 752 A.2d 832. In our view, the parties have once again adopted an approach that is much too simplistic. Not briefed by the parties is the question of whether a State's "make whole" doctrine is preempted by ERISA, if ERISA applies. An appellate court will generally "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available `unless the questions so raised on appeal go to jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973) (citation omitted). None of the exceptions to the general rule are implicated here. As the precise issue was not presented to the trial court and, indeed, has not been briefed on appeal, we decline to rule upon it in the first instance. It would be unfair to the parties to rule upon the issue, which is not necessary for disposition of this appeal, without affording the parties an opportunity to develop the appropriate record and argue their respective positions. Moreover, there has been extensive litigation throughout the country on the issue, and it has received uneven treatment.
A number of courts have held that a State's "make whole" doctrine is preempted by ERISA. See Harris, supra, 208 F.3d at 280-81; Sunbeam-Oster Co., Inc. v. Whitehurst Jr., 102 F.3d 1368, 1375-76 (5th Cir.1996); Ryan by Capria-Ryan v. Fed. Express Corp., 78 F.3d 123, 126-28 (3d Cir.1996); Provident Life & Accident Ins. Co. v. Linthicum, 930 F.2d 14, 16 (8th Cir.1991); Blue Cross & Blue Shield v. Sanders, 974 F.Supp. 1416, 1420-22 (N.D.Ala.1997), aff'd, 138 F.3d 1347 (11th Cir.1998); MedCenters Health Care, Inc. v. Ochs, 854 F.Supp. 589, 592-94 (D.Minn. 1993), aff'd, 26 F.3d 865 (8th Cir.1994). But see Cagle, supra, 112 F.3d at 1521; Cutting, supra, 993 F.2d at 1297-98; York v. Sevier County Ambulance Auth., 8 S.W.3d 616, 621 (Tenn.1999). We do not suggest that these are the only cases that have ruled upon the issue. We merely point these cases out for guidance of the parties on remand.
For further guidance of the parties on remand, we suggest they develop the following issues:
(1) Does the plan contain language expressly dealing with the "make whole" doctrine?[3]
(2) What is the effect of any express language upon the preemption clause?
*914 (3) What is the effect of a determination that there is no express language in the plan dealing with the subject?
(4) Has plaintiff been made whole?
The case settled for $275,000. Plaintiff's medical expenses were nearly $38,000. Plaintiff also claimed a wage loss of $360,000 and significant loss of function in his lower back. However, he asserts that he compromised his claim because he was concerned that he might not be able to prove that his back surgery was related to the incident. If the back surgery was related to the incident, obviously his recovery was insufficient. On the other hand, if the back surgery was not related to the incident, his settlement may be more than adequate. We suggest that this issue needs to be developed more completely on remand. For example, because subrogation is essentially an equitable doctrine,[4] on remand the parties should consider whether there should be a pro-rata allocation made on equitable principles if there is a serious question as to whether plaintiff's back injury and resultant medical expenses are related to the accident. We have a strong public policy favoring settlement of litigation. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990) (citing Jannarone v. W.T. Co., 65 N.J.Super. 472, 476,168 A.2d 72 (App.Div.), certif. denied, 35 N.J. 61, 171 A.2d 147 (1961)). An allocation made on equitable principles would be consistent with that strong public policy and would provide some measure of protection to an injured plaintiff who may not, in good faith, be willing to run the risk of an adverse judgment. These are merely examples of questions that should be considered on remand. Obviously, the parties are free to develop what other issues may be relevant in resolving the present dispute between them.
Reversed and remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] Because the parties have not supplied us with any of the relevant dates, we cannot determine if the agreement was reached before or after Werner was decided.
[2] We also noted that a mini-trial may be necessary if there is a legitimate, good faith dispute regarding whether the settlement proceeds represent the full amount of plaintiff's damages. Werner, supra, 332 N.J.Super. at 84-85, 752 A.2d 832; see also Ludwig, supra, 393 N.W.2d at 146 n. 2. We said that the health insurer bears the burden of persuasion that the proceeds are adequate to permit reimbursement. Werner, supra, 332 N.J.Super. at 84, 752 A.2d 832. We were "satisfied that the calculation of a fair amount of damages is a matter well within the ken of trial judges and is a function routinely performed by them." Id. at 85, 752 A.2d 832. Finally, we observed that the determination must "be reached by the judge, not a jury, and we [left] to the experience of the trial judge the discretion as to how to proceed when the question of whether the settlement proceeds are adequate is in dispute." Ibid.
[3] We note that the parties have not supplied us with the entire plan in their respective appendices. Rather, they have given us very limited excerpts.
[4] Montefusco Excavating & Contracting Co. v. Middlesex County, 82 N.J. 519, 523, 527, 414 A.2d 961 (1980).