834 A.2d 1047 (2003)
364 N.J. Super. 144
Betty L. WOODGER, Plaintiff-Appellant,
v.
CHRIST HOSPITAL and Oscar Pizolli, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 2003.
Decided November 10, 2003.
*1048 George J. Kenny, Roseland, argued the cause for appellant (Connell Foley, attorneys; Mr. Kenny, of counsel and on the brief; Lynne A. Aretsky, on the brief).
V. Christopher Hirsch argued the cause for respondent Christ Hospital (Hardin, Kundla, McKeon, Poletto & Polifroni, attorneys; Mr. Hirsch, of counsel and on the brief). Respondent Oscar Pizolli did not file a brief.
Before Judges PRESSLER, CIANCIA and PARKER.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This personal injury negligence case raises a novel issue respecting the application of the statutory collateral source rule, N.J.S.A. 2A:15-97. Plaintiff Betty L. Woodger is receiving social security disability benefits on account of her disability caused or contributed to by the negligence of defendants Christ Hospital and Oscar Pizolli. In plaintiff's negligence action against these defendants, the jury awarded her $100,000 as compensation for past lost income, $96,000 as compensation for future lost income, and $100,000 for pain and suffering. Although plaintiff does not challenge the necessity of considering her social security disability benefits as a collateral source under N.J.S.A. 2A:15-97, she asserts that she is entitled to a credit against the deduction of those benefits from her jury award for the contributions she has made for social security during her working life, some $60,000. The trial judge disagreed, and plaintiff appeals that ruling, among others. While we agree with the trial judge that plaintiff is not entitled to a credit for all the contributions she has made over her working life, we have concluded, for reasons of statutory interpretation and consideration of equity, that she is entitled to a credit for the maximum social security contributions due from a taxpayer for the same period for which her disability payments have been deducted as collateral source payments.
This is how the issue arises. In 1996 plaintiff, complaining of left knee pain, was diagnosed as suffering from patellofemoral *1049 disease. It is a progressive condition caused by a malalignment of the patella and the patella tendon which causes the bones above and below the kneecap to rub against each other, resulting in degeneration and arthritic changes of the knee. In 1997 plaintiff was diagnosed as having the same condition in her right knee. She was prescribed a regimen of physical therapy involving the use of a Kinetron machine and had nineteen sessions at the Christ Hospital Therapy Department prior to June 1998, when she underwent an arthroscopic repair of a torn lateral meniscus in her right knee. In July 1998, the first time after the surgery that she used the Kinetron machine, she injured her right knee, and she alleges that she sustained the injury because of the negligent instructions given to her by defendant Pizolli, the physical therapist, respecting the use of the machine.
Plaintiff brought this action against the hospital and Pizolli alleging that because of Pizolli's negligence, she has lost significant mobility and is required on a permanent basis to use a cane or walker. Plaintiff is a registered nurse, and although she had previously held administrative nursing positions, at the time of the injury, because of staff restructuring, she was employed as a floor nurse. She claimed that she was no longer able to work and in November 1999 she was awarded social security disability benefits. The jury determined the liability claim against defendants and reached the compensatory damages verdict we have described. Plaintiff appeals both from the jury verdict and from the judgment thereafter entered by the trial court by which the verdict was molded in accordance with the collateral source statute and to award prejudgment interest.
Before addressing the molded judgment which raises the collateral source issue, we consider briefly plaintiff's challenges to the verdict, which we reject substantially for the reasons cogently and articulately stated by the trial judge in denying her motion for new trial or additur. See R. 2:11-3(e)(1)(C). We add only these comments. Plaintiff argues that the trial judge erred by instructing the jury that if it found that plaintiff's present physical condition was attributable both to the injury she sustained on the Kinetron machine and to her pre-existing medical condition, it could not award damages attributable solely to the preexisting condition. The full charge as given accorded with Model Jury Charge 6.11G, "Aggravation of a Preexisting Illness," and was clearly a correct statement of the law. Plaintiff does not suggest otherwise. Rather, her argument is that the proofs were insufficient to sustain the charge because, she claims, the surgery she had in June 1998 resolved her pre-existing condition. The fact of the matter is, however, that there was ample expert testimony, both by her medical expert and defendant's, to permit the jury to find that the pre-existing condition was permanent, progressive and degenerative, only alleviated by the surgery, and that at most, the July 1998 event exacerbated the condition and accelerated its progress.
The main thrust of the additur motion was plaintiff's contention that the jury's future loss of income award was against the weight of the evidence because it only compensated her for two years of future loss of income although she was only 56 years old at the time of trial. As the trial judge pointed out, however, there was evidence from the defense that because of her progressive patella disease, plaintiff would have been able to work only for two years more or so even if the July 1998 injury had not occurred. In sum, the trial judge was satisfied that the jury's damages verdict was supported in all respects by the proofs and was not disproportionate *1050 to the injury sustained. Based on our review of the record, we agree. We are satisfied that the verdict was fair when viewed against the record and was hardly so insufficient as to shock the conscience of the court or engender a sense of wrongness. See, e.g., Mahoney v. Podolnick, 168 N.J. 202, 229-230, 773 A.2d 1102 (2001); Carey v. Lovett, 132 N.J. 44, 68, 622 A.2d 1279 (1993); Baxter v. Fairmont Food, 74 N.J. 588, 598-599, 379 A.2d 225 (1977).
We come now to the collateral source problem. To begin with, because the disability decision of the Social Security Administration was, by its terms, reviewable in five years, the judge regarded any benefits payable beyond that time as uncertain and speculative. He therefore limited the collateral-source deduction to benefits plaintiff had received between November 1999 and the date of the molded judgment, July 2002, plus the benefits she would thereafter receive up to November 2004. As to future benefits, he directed that they be subject to a cost of living increase of 2.5 percent commencing January 2003 and that the total amount of future benefits thus calculated be discounted to present value by use of a 4.3 percent discount rate, the rate testified to by plaintiff's economic expert. He also required the deduction of plaintiff's income tax payments attributable to her receipt of social security benefits. The figure arrived at by the attorneys using this formula was a total collateral-source deduction of $87,724.25. Plaintiff does not dispute the calculation or any of the included elements thereof, and we agree that, as far as it went, the formula arrived at by the trial judge was impeccable. The dispute is only whether the contributions made by plaintiff to social security over her working life, a total of nearly $60,000, should also have been credited to her.
Neither our research nor that of the parties has disclosed any reported opinion in any jurisdiction addressing the question of whether, in the application of the collateral source rule, the plaintiff is entitled to credit for contributions previously made although many jurisdictions deem social security benefits to constitute a deductible collateral source. We approach the issue, therefore, by considering the policy and purpose of the collateral source rule and the nature of social security disability benefits in that context.
The collateral source rule, N.J.S.A. 2A:15-97, enacted in 1987, provides in full as follows:
In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972, c. 70 (C. 39:6A-1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.
The legislative intention in enacting the statute was to abrogate the common-law collateral-source, that is, the rule that permitted "a tort victim to retain collateral benefitsthat is, benefits that do not come from a defendantin addition to any amount that the victim might recover from *1051 that defendant." Kiss v. Jacob, 138 N.J. 278, 281, 650 A.2d 336 (1994). The purpose was to contain spiraling automobile insurance costs by precluding the plaintiff from recovering from the tortfeasor those damages duplicative of benefits the plaintiff has already received or is entitled to receive by way of "contract, employment, or some other relation." Ibid. Thomas v. Toys "R" Us, Inc., 282 N.J.Super. 569, 584, 660 A.2d 1236 (App.Div.), certif. denied, 142 N.J. 574, 667 A.2d 191 (1995). As the Supreme Court made clear in Kiss v. Jacob at 282, 650 A.2d 336, the types of benefits contemplated by the common-law rule and thus generally intended to be covered by the statute include those "from life-or health-insurance policies, from employment contracts, from statutes such as workers' compensation acts and the Federal Employers' Liability Act, from gratuities, from social legislation such as social security and welfare, and from pensions under special retirement acts." As enacted, the statute omitted from its ambit the proceeds of life insurance policies and, because of the lien consequence of a workers' compensation award, N.J.S.A. 34:15-40, workers' compensation benefits as well. We have also held that benefits such as Medicaid, subject to reimbursement by the plaintiff to the payer from the proceeds of a negligence judgment or settlement, are similarly not includable as a collateral source because they do not constitute double recovery. See Lusby v. Hitchner, 273 N.J.Super. 578, 642 A.2d 1055 (App.Div. 1994). Following the general identification of collateral sources by Kiss v. Jacob, we have, however, held that social security disability payments are included. Parker v. Esposito, 291 N.J.Super. 560, 565-566, 677 A.2d 1159 (App.Div.), certif. denied, 146 N.J. 566, 683 A.2d 1162 (1996); Thomas v. Toys "R" Us, Inc., supra, at 589, 660 A.2d 1236. We further held in Parker that only those future payments of social security benefits that are neither contingent nor speculative nor subject to change or modification may be included, an instruction the trial court here followed by limiting the collateral-source calculation to those social security benefits payable up to the time of the mandated review.
The issue that has not, however, heretofore been considered is whether the plaintiff's contributions to social security may be credited against the collateral-source deduction. In urging that she is so entitled, plaintiff relies on the provision of the statute authorizing the crediting against the collateral-source deduction of the premium paid for the collateral-source insurance proceeds. The evident intent of the statute in this regard was to recognize that since plaintiff has had to pay for the duplicative benefit that is being subtracted from the tort recovery, the cost to plaintiff of contracting for that benefit should, as a matter of economic fairness, be deducted from the total benefit proceeds. That is to say, it is plaintiff's net "collateral" proceeds rather than the gross proceeds that are deducted from the tort recovery. The trial judge denied any such crediting here simply on the ground that social security benefits are not insurance and the statute speaks only to insurance premiums. We do not, however, regard the statute's silence in this regard as dispositive.
We note at the outset, that the statute's reference only to insurance premiums as an offset against otherwise deductible insurance proceeds may be viewed in the light of the observation of the Supreme Court in Kiss v. Jacob, supra, 138 N.J. at 282, 650 A.2d 336, that the language of the statute "suggests strongly that the Legislature's essential concern was with insurance-type benefits." We are, therefore, satisfied that it is fair to draw the inference that the Legislature, rather than intending to exclude social security contributions *1052 as a credit against benefits, simply did not consider the issue. Our task, then, is to determine whether allowing a set-off for the social security contributions is consonant with the overall legislative intent in enacting the statute.
At the outset, we agree with the trial judge that social security benefits do not constitute privately contracted-for insurance proceeds. Among the distinctions here relevant is that insurance contracts are ordinarily voluntary. Social security contributions are mandatory. 26 U.S.C.A. §§ 3101 and 3102. Moreover, there is a direct relationship between the insurance premium and the policy proceeds in that the premium pays for coverage for a specific period of time. If the risk is realized during that period, the entire policy proceeds paid for by that premium are payable to the insured. Social security benefits operate quite differently. Employees are required by law to make an annual contribution, equaled by their employer, based on their salary but up to a specified cap, to create the fund that will eventually accord benefits upon disability, retirement, or death. As we understand the social security law, disability and retirement benefits are in the same amount, subject to the same federal income tax, and an employee who receives disability benefits prior to retirement will have his benefits automatically redenominated as old-age benefits when reaching retirement age. 42 U.S.C.A. § 423; 26 U.S.C.A. § 86(d)(i); Publication 915, Social Security and Equivalent Railroad Retirement Benefits, Department of the Treasury, Internal Revenue Service (2002).
From the foregoing thumbnail sketch, we think it plain that the social security contributions made by employees over their working lives pay, in effect, for considerably more than the limited period of disability payments that may be included as a collateral benefit under the Parker rationale. The totality of those contributions, equaled by the employer, pay for continued disability benefits, if any, after the initial review of the disability award; they pay for the retirement benefit the employee will receive upon reaching retirement age whether or not disability benefits continue to that time; and they pay for death and survivor benefits. Nevertheless, it is obvious that but for the mandatory contributions made by employees over their working lives, the disability benefit, the advantage of which accrues as well to the tortfeasor and most likely the tortfeasor's insurer, would not have been available. In that respect, the similarity between social security disability benefits and insurance proceeds outweighs their differences because conceptually the insurance premium and the social security contribution share the same purpose and the same consequence in the case of disability. We therefore conclude that while allowing a credit against the collateral-source deduction for the totality of contributions made by the tort victim prior to the disability is inappropriately excessive, we are also persuaded that some form of credit for those contributions should be allowed.
We are satisfied that the insurance premium model provides the key to reconciling the conceptual similarities and distinctions between social security contributions and insurance premiums while at the same time preserving both the fundamental intent of the statute and its recognition of the fairness of the insurance-premium credit. Consistent with that model, the offset for contributions must be limited to the same time period as is covered by the collateral-source rule. Thus, because plaintiff's tort recovery is being reduced by five years worth of disability benefits, five years worth of social security contributions should be credited against *1053 that deduction. Presumably, because the plaintiff receiving disability benefits is unable to work during the period in which the benefits are received, there will be no contribution made during that time. The question then is the measure of the contribution to be deducted. Because the portion of the total social security contributions attributable to disability benefits eludes precise calculation, we conclude that the most reasonable, direct and fair accommodation is to credit the plaintiff with the employee's social security contribution at the maximum employee contribution rate for each year of the five years for which the disability benefit deduction has been made. The final judgment must therefore be amended to so reduce the collateral-source deduction, upon notice to the parties and such proofs as they may offer in the event of their inability to agree on the credit amount.
We remand to the trial court for adjustment of the collateral-source deduction in accordance with this opinion. In all other respects, the final judgment is affirmed.