859 A.2d 729

WHITE CONSOLIDATED INDUSTRIES, INC., FRIGIDAIRE COM-
PANY HOME COMFORT PRODUCTS, AND BLUME, GOLDFA-
DEN, BERKOWITZ, DONNELLY, FRIED & FORTE, P.C.,
PLAINTIFFS–RESPONDENTS CROSS RESPONDENT, v. PEI
LIN, M.D., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 28, 2004—Decided October 22, 2004.

Before Judges COLLESTER, PARRILLO and GRALL.

*John T. Coyne*, argued the cause for appellant (*McElroy, Deutsch & Mulvaney*, attorneys; *Mr. Coyne*, of counsel and on the brief).

*Jeffrey T. La Rosa*, argued the cause for respondents, White Consolidated Industries, Inc. and Frigidaire Company Home Comfort Products (*Schenck, Price, Smith & King*, attorneys; *Gilbert S. Leeds*, of counsel; *Mr. La Rosa*, on the brief).

*Kenneth Berkowitz*, argued the cause for pro se respondents (*Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte*, attorneys; *Mr. Berkowitz*, on the brief).

The opinion of the court was delivered by

PARRILLO, J.A.D.

In an earlier appeal, we remanded to the trial court for a determination whether the employer's medical benefits plan (Plan), qualified as a welfare plan under the Employee Retirement Income Security Act of 1974 (ERISA), 29 *U.S.C.A.* §§ 1001 to— 1461, is either self-funded or insured. *White Consolidated Industries, Inc. v. Pei Lin, M.D.*, No. A–1280–00T5 (App. Div. June 4, 2002) (slip op. at 5–6). If the former, the employer would be entitled to recover, by way of subrogation or reimbursement, the payments it has made to an employee for treatment of injuries caused by a tortfeasor against whom the employee has obtained a judgment expressly exclusive of those payments. On the other hand, if the plan is insured, and therefore subject to State regulation, New Jersey's collateral source rule, *N.J.S.A.* 2A:15–97, operates to bar the health insurer from seeking subrogation against the tortfeasor or reimbursement from the employee who successfully has sued. On remand, the trial court deemed the Plan in issue a non-insured plan and, therefore, preemptive of our collateral source bar, despite having contracted out certain administrative services to an insurance company and having provided

some insured benefits to a limited class of out-of-state employees. We affirm.

Some background necessary to understand the matter was recited in our earlier opinion:

> Plaintiff in this action is White Consolidated Industries, Inc., whose ERISA plan is in question. White employee, Carmen Cruz, whose husband Jorge Cruz sued *per quod*, brought a medical malpractice action against [defendant] Dr. Pei Lin, alleging mistreatment of her sinus ailments.[1] White's ERISA plan paid some $180,000 for medical expenses allegedly incurred by Cruz as the result of Dr. Lin's malpractice. The case went to trial, and the jury awarded the Cruzes damages of $325,000 apportioned by it to plaintiff's pain and suffering and lost wages and the *per quod* claim. Medical expenses were expressly excluded. The trial judge added prejudgment interest in the amount of $71,045.89, entering judgment for a total of $396,045.89.
>
> White was not a party to the Cruz action. It had sought and was denied intervention in order to assert its reimbursement-subrogation claim. As we understand the record, the judge in the underlying action was not satisfied with White's proof of its actual expenditures and directed it to file a separate action although judicial economy would have suggested disposition of White's claim in the underlying action. This action against the tortfeasor for subrogation ensued.

The matter first came to us on appeal from the trial court's grant of summary judgment in favor of White, relying on our opinion in *Perreira v. Rediger*, 330 *N.J.Super.* 455, 750 *A.2d* 126 (App.Div.2000), in which we held that the collateral source rule did not abrogate the health insurer's common-law and contractual rights to subrogation against the tortfeasor or reimbursement from the plaintiff-insured. During the pendency of that appeal, the Supreme Court reversed our judgment, *Perreira v. Rediger*, 169 *N.J.* 399, 778 *A.2d* 429 (2001). However, that ruling did not end the inquiry. We still had to decide whether an ERISA health plan is subject to the bar of *N.J.S.A.* 2A:15–97 or whether federal law to the contrary preempts the State statute. This question

---

1 Plaintiff Frigidaire Company Home Comfort Products is a division of White and employed the plaintiff in the underlying medical malpractice case which preceded the subrogation action from which this appeal arose. The remaining plaintiff, the law firm of Blume, Goldfaden, Berkowitz, Donnelly, Freed & Forte (Blume), intervened in the underlying subrogation action and seeks recovery of counsel fees pursuant to its agreement with White. The actions were consolidated below.

remained because an insured employee benefit plan is subject to state regulation and "saved" from the general rule of preemption by virtue of ERISA's savings clause, 29 *U.S.C.* § 1144(b)(2)(A), but a self-insured ERISA plan is not "deemed" an insurance company and is thus exempt from state law regulating insurance by ERISA's "deemer" clause, 29 *U.S.C.* § 1144(b)(2)(B). *FMC Corp. v. Holliday,* 498 *U.S.* 52, 111 *S.Ct.* 403, 112 *L.Ed.*2d 356 (1990). In other words, employee benefits plans that are insured by insurance companies are bound indirectly by state insurance regulations, such as *N.J.S.A.* 2A:15–97, insofar as they apply to the plans' insurers. *Id.* at 61, 111 *S.Ct.* 403. Because the record on appeal was insufficient to permit us to determine whether the ERISA plan here is self-funded or insured, we remanded to the trial court for that purpose alone. *White Consolidated Industries, Inc., supra,* (slip op. at 5–6).

On remand, it was established that White has facilities in a number of states and Cruz was an employee of White's Frigidaire Division in Edison. White established its employee welfare benefits plan in 1988 as a single, integrated, company-wide plan, under which were established sub-plans—designated by White as "programs"—through which health benefits were made available to employees in specific regions under various funding arrangements.

The medical benefits White paid on behalf of Cruz were paid pursuant to a "Point of Service" program established under the general umbrella of White's ERISA plan, which provided specific benefits to White's New Jersey employees. The Point of Service program was entirely self-funded by White. Under the terms of the program, White paid a monthly fee to The Prudential Insurance Company of America (Prudential) to administer the program and process employee claims for medical benefits. Under this arrangement, while Prudential processed employee claims, White remained entirely responsible for the risk of payment of actual benefits. It is undisputed that White's plan was not regulated by the State of New Jersey.

A small percentage of White's health benefits, available only to 124 of White's employees who worked exclusively outside New Jersey, were insured. As noted, none of White's New Jersey employees received or were eligible to receive insured medical benefits. In other words, no "programs" providing insured health benefits were in operation in New Jersey or available to White's employees in New Jersey. In addition to health benefits, White provided other insured benefits, primarily life insurance, to a small number of employees outside New Jersey. Of the approximately $60 million in benefit payments nationwide under the Plan, roughly only 12.5% were funded by insurance.

The Plan includes a reimbursement and subrogation provision as follows:

> This Plan, or the Company, shall be reimbursed for the costs of the benefits paid under this Plan to or on behalf of a Covered Person under a Benefit Program if the Covered Person receives, or is entitled to receive, any payment from another source on account of the actions of another person or other circumstances. The obligation of the Covered Person to provide such reimbursement shall apply to the extent that the payments received, or to be received, by the Covered Person do not exceed the benefits provided under this Plan. In addition, under such circumstances, the Plan and the Company shall be subrogated to the rights of the Covered Person and thereby entitled to receive reimbursement directly from such other source.
>
> . . . .
>
> This Plan and the Company shall be entitled to be reimbursed from the Covered Person and to enforce its right of subrogation with respect to the first payments that are made to, or with respect to, the Covered Person. In addition, the reimbursement and subrogation rights of the Plan and the Company shall apply notwithstanding the fact that the Covered Person, any court of law, or other third person believes, rules or otherwise determines that the Covered Person (A) may or may not be able to recover any additional monies from the other source, or (B) will not actually receive payment from the other source or other sources that is adequate compensation under the circumstances.

Based on the evidence adduced on remand, the motion judge found, as a matter of undisputed fact, that White's plan was self-funded. As a matter of law, therefore, the Plan preempted New Jersey's collateral source rule, entitling White to summary judgment.

On this appeal, defendant Lin argues the Plan is not self-funded because it provides a portion of its benefits through the purchase of an insurance policy. We disagree. The Plan does not purchase insurance to provide health insurance benefits in New Jersey and the contract between White and Prudential is for administrative services only.

■ A plan is ordinarily defined as self-funded when "it does not purchase an insurance policy from any insurance company in order to satisfy its obligations to its participants." *FMC Corp. v. Holliday, supra,* 498 *U.S.* at 54, 111 *S.Ct.* 403; *see also Admin. Comm. of The Wal–Mart Assoc. Health & Welfare Plan v. Willard (Wal–Mart),* 302 *F.Supp.*2d 1267, 1283 (D.Kan.2004). Provided that the administrator does not assume any financial risk relating to benefit claims, a plan remains self-funded even if it contracts with an insurance company to provide administrative services. *Ins. Bd. Under Social Ins. Plan of Bethlehem Steel Corp. v. Muir,* 819 *F.*2d 408, 411–13 (3d Cir.1987); *Moore v. Provident Life & Acc. Ins. Co.,* 786 *F.*2d 922, 926–27 (9th Cir.1986); *Wal–Mart, supra,* 302 *F.Supp.*2d at 1283; *Drexelbrook Eng'g Co. v. The Travelers Ins. Co.,* 710 *F.Supp.* 590, 596–98 (E.D.Pa.), *aff'd o.b.* 891 *F.*2d 280 (1989); *see also O'Brien v. Two West Hanover Co.,* 350 *N.J.Super.* 441, 448, 795 *A.*2d 907, 911 (App.Div.2002).

■ Here, Prudential's role in relation to the Plan and the participant employee's claim was not that of an insurance company, but was merely as an administrative overseer. By virtue of its agreement with White, Prudential did not assume any legal obligation with respect to payment of claims. Rather, it contracted simply to negotiate certain rates with a network of providers. Its activities vis-à-vis the Plan have nothing to do with the spreading and underwriting of a policyholder's risk and, by all accounts, do not amount to the business of insurance or come within the regulatory purview of the state banking and insurance authorities. The fact that Prudential also happens to be an insurance company does not transform the nature of its services under the agreement with White. Thus, the Plan is not deemed insured simply because

it contracts with Prudential to provide purely administrative services and is not exempted from preemption by ERISA's insurance savings clause, 29 *U.S.C.* § 1144(b)(2)(A). *See also* 29 *U.S.C.* § 1144(b)(2)(b).

Nor does the plan lose its self-insured or self-funded status by purchasing health and certain other types of insurance for a limited class of non-New Jersey employees. *See United Foods & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 *F.*2d 1157, 1162 (9th Cir.1986). Although the Plan provides a small portion of its benefits through the purchase of an insurance policy, it does not purchase insurance to provide health benefits in New Jersey. As long as these other types of insured benefits are separate and distinct from the self-funded medical benefits provided under the Plan by White to its employees, the Plan remains an uninsured, self-funded welfare plan for ERISA preemption purposes. *Ibid.*; *see also Moore, supra,* 786 *F.*2d at 927; *Wal–Mart, supra,* 302 *F.Supp.*2d at 1283–84.

At issue in *Pacyga, supra,* was the funding source of an employer's ERISA plan and whether Arizona's anti-subrogation law applied to bar the employer from enforcing the plan's subrogation clause in order to recover certain medical benefits paid on behalf of its employee. 801 *F.*2d at 1159. While the employer's plan provided self-funded medical benefits, it also carried stop-loss insurance coverage providing for payment to the plan in event it had to pay out more than a certain amount in claims in a given year and further provided life insurance benefits and accidental death and dismemberment benefits partially with insurance. *Ibid.* Despite the presence of the mixed insured benefits, the court held that the plan remained self-funded for ERISA purposes. *Id.* at 1161–62. With regard to the stop-loss insurance, the court held that such a protective measure benefited the employer, did not pay benefits directly to employees, and therefore, cannot be considered an insurance contract with plan participants. *Ibid.* As to the other types of insured benefits, the court held they were "completely separate" from the self-funded health benefits provid-

ed by the plan and did not render the entire plan insured. *Ibid.* Rather, the plan was protected by ERISA's deemer clause, 29 *U.S.C.* § 1144(b)(2)(B), and preemptive of the Arizona anti-subrogation law. *Ibid.*

■ We are persuaded by the rationale of *Pacyga.* Consistent therewith, we hold that where, as here, the medical benefits in question are provided under an employer's fully self-funded employee health care plan, and other benefits purchased by an insurance policy are completely separate from those health benefits, then the plan is not deemed to be insurance for purposes of ERISA's insurance savings clause, 29 *U.S.C.* § 1144(b)(2)(A). Rather, such a plan is properly termed a non-insured plan, protected by ERISA's deemer clause, *U.S.C.* § 1144(b)(2)(B), and preemptive of state insurance laws and regulations, including in this instance, New Jersey's collateral source rule. Such a result violates no public policy underlying New Jersey's regulation of insurance since White did not provide an insurance contract to any of its New Jersey employees for health benefits and fully assumed the financial risk and obligation for the payment of such claims under the Plan. *See, e.g., Perreira, supra,* 169 *N.J.* at 418, 778 *A.*2d at 441. By the same token, the result reached here advances important public policies underlying ERISA by recognizing that reimbursement and subrogation rights are vital to ensuring the financial stability of self-funded plans. *Wal–Mart, supra,* 302 *F.Supp.*2d at 1283.

Finally, defendant claims that, in any event, the Plan's contractual subrogation rights were not created until January, 1995, after most of the medical bills in dispute were incurred and, therefore, have no retroactive application. This argument was not raised below, *Nieder v. Royal Indem. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.*2d 142, 145 (1973), is beyond the scope of our limited remand, lacks foundation in either fact or law, and is without merit. *R.* 2:11–3(e)(1)(E).

Affirmed.