**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1152-18T1

LEONEL SERIO,

     Plaintiff-Respondent,

v.

FIDELITY & GUARANTY
INSURANCE UNDERWRITERS,
INC., d/b/a TRAVELERS
INSURANCE COMPANY,

     Defendant-Appellant,

and

NYSA-ILA WELFARE FUND,

     Intervenor-Respondent.

_____

Submitted December 18, 2019 – Decided February 14, 2020

Before Judges Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5125-14.

Law Offices of William E. Staehle, attorneys for appellant (Peter J. Dahl, on the brief).

Ginarte Gallardo Gonzalez Winograd, LLP, attorneys for respondent Leonel Serio, join in the brief of appellant Fidelity & Guaranty Insurance Underwriters, Inc.

Marrinan & Mazzola Mardon PC, and The Lambos Firm, LLP, attorneys for intervenor-respondent NYSA-ILA Welfare Fund (John Philip Sheridan and James Robert Campbell, on the brief).

PER CURIAM

Plaintiff Leonel Serio was injured in a motor vehicle accident on July 23, 2008. Because the party at fault was underinsured, Serio filed a complaint seeking to recover the resultant medical expenses from his own insurance carrier, Fidelity & Guaranty Insurance Underwriters, Inc. (Fidelity), with whom he had underinsured motorist benefits.

At the time of the accident, Serio was employed by Maher Terminal, and he filed a claim for disability benefits arising out of the accident. Serio received $13,624 from the New York Shipping Association – International Longshoremen's Association Welfare Fund (NYSA-ILA), the administrator of his employer-provided health plan. NYSA-ILA argues it is entitled to reimbursement for these funds, because, as a condition for the receipt of these benefits, Serio signed a "Lien/Recovery Authorization" placing a lien on all

recovery Serio received via "settlement, [j]udgment, arbitration award, insurance proceeds[,] or other payment" arising out of the matter.

Fidelity moved to bar any evidence of the NYSA-ILA lien pursuant to the collateral source rule, N.J.S.A. 2A:15-97, arguing the fund was not fully self-funded and thus was not entitled to preemption by the federal Employee Retirement Income Security Act (ERISA).  Serio moved to bar the NYSA-ILA's lien as invalid.  NYSA-ILA then intervened in the litigation and opposed both motions.

The motion judge entered orders barring evidence of the lien and holding the lien to be invalid.  NYSA-ILA appealed the orders, arguing that ERISA preempts the collateral source rule.  Because the court did not grant oral argument, which was requested by Fidelity should the motion be opposed, which it was, we remanded to the Law Division for oral argument. [1]

On remand, the case was assigned to a different judge, who, after hearing oral argument, denied Fidelity's motion, holding the NYSA-ILA Welfare Fund was an ERISA plan, and that New Jersey's collateral source rule is preempted by ERISA.  Fidelity now appeals.  We affirm.

---

[1] Serio v. Fidelity & Guar. Ins. Underwriters, Inc., No. A-0055-16 (App. Div. Dec. 21, 2017).

On appeal, Fidelity argues the collateral source statute is saved from ERISA preemption because it is a law geared toward the regulation of insurance, and that NYSA-ILA is subject to the collateral source rule because it is not completely self-funded. We disagree.

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted). Because the present case implicates only issues of law, our review is de novo.

At issue is whether N.J.S.A. 2A:15-97 is preempted by ERISA. N.J.S.A. 2A:15-97 eliminates the possibility of double-recovery by requiring a deduction "from any tort judgment the amount received by plaintiff from collateral sources (other than workers' compensation and life insurance) less any insurance premiums plaintiff has paid." Perreira v. Rediger, 169 N.J. 399, 409 (2001). There is a multi-step analysis to determine whether a state law is preempted by ERISA. 29 U.S.C. § 1144.[2] Three provisions of ERISA are relevant. First, 29 U.S.C. § 1144(a), commonly referred to as the preemption clause, provides:

---

[2] The United States Supreme Court has noted the ERISA preemption clause is not without issues. "We indicated in Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724 (1985), that these provisions 'are not a model of

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan . . . .

Second, 29 U.S.C. § 1144(b)(2)(A), the saving clause, provides:

Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any [s]tate which regulates insurance, banking, or securities.

Finally, 29 U.S.C. § 1144(b)(2)(B), the deemer clause, provides:

Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company . . . or to be engaged in the business of insurance . . . for purposes of any law of any [s]tate

---

legislative drafting.' Id. at 739. Their operation is nevertheless discernible." FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990). While somewhat difficult to discern, the U.S. Supreme court has simplified the preemption clause as follows:

It establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA. The saving clause returns to the [s]tates the power to enforce those state laws that "regulate insurance," except as provided in the deemer clause. Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

[Ibid.]

A-1152-18T1

purporting to regulate insurance companies [and] insurance contracts. . . .

The first step in determining preemption by ERISA is whether the subject statute, N.J.S.A. 2A:15-97, "relate[s] to any employee benefit plan[.]" 29 U.S.C. § 1144(a). The United States Supreme Court has considered that "a state law relates to an ERISA plan 'if it has a connection with or reference to such a plan.'" Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983)). The Supreme Court has required courts to consider the "'objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans" when deciding whether the law relates to an ERISA plan. Ibid. (quoting Cal. Div. of Labor Standards Enf't v. Dillingham Constr., 519 U.S. 316, 325 (1997)).

In O'Brien v. Two West Hanover Co., 350 N.J. Super. 441, 448 (App. Div. 2002), we stated "[g]iven the breadth of the preemption clause and the United States Supreme Court's expansive interpretation of it, we have little doubt that ordinarily New Jersey's collateral source rule is also preempted by ERISA." Federal courts have agreed. See Bd. of Trs. of Plumbers & Pipefitters Local Union No. 9 Welfare Fund v. Drew, 445 F.App'x 562, 568 (3d Cir. 2011) ("New Jersey's collateral source statute is preempted by ERISA's explicit preemption

6

clause because it 'relates to' an ERISA plan and does not even purport to 'regulate insurance' within the meaning of the saving clause.") (citation omitted); Danowski v. United States, 924 F. Supp. 661, 672 (D.N.J. 1996) (concluding that, in that case, N.J.S.A. 2A:15-97, was preempted by ERISA.).

On this issue, the legislative history of the statute is instructive. Perreira, 169 N.J. at 409. The New Jersey Senate Judiciary's Committee statement to the bill, then known as S. 2708, declared:

> The traditional "collateral source rule" holds that damages awarded in a suit for personal injury or wrongful death should not be reduced because the insured claimant has received insurance proceeds or other compensation covering the same injuries. In effect a claimant is paid twice for the same injury.
>
> [Id. at 409-10 (quoting Statement by Senate Judiciary Committee (October 30, 1986)).]

The Committee clarified S. 2708 "would eliminate the collateral source rule and require that awards for personal injury be reduced by any compensating benefits which the plaintiff has received from other sources." Id. at 410 (quoting Statement by Senate Judiciary Committee (October 30, 1986)).

> Generally, awards in civil suits are intended to compensate injured persons for such things as loss of wages, medical costs, and other costs which are attendant to the injury. To the extent that the injured party is being compensated for the same things from different sources there is double recovery on the part of

7

the plaintiff.  This bill, by requiring that the benefits received from the other sources be offset against the award, is intended to effect cost containment.

[Ibid. (quoting Statement by Assembly Insurance Committee (Sept. 1, 1987)).]

In Perreira, the Supreme Court determined the "[l]egislature had two choices: to benefit health insurers by allowing repayment of costs expended on a tort plaintiff, or to benefit liability carriers by reducing the tort judgment by the amount of health care benefits received.  As the legislative history reveals, the choice was made to favor liability carriers." Id. at 410-11.  Thus, as the statute covers liability carriers, it relates to those who hold benefit plans.[3]

The second step in considering ERISA preemption is to determine whether N.J.S.A. 2A:15-97 regulates insurance.  This "saving clause" is considered in the U.S. Supreme Court case Kentucky Association of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003).  There the court articulated the two-part Miller test which requires that, for a law to be deemed as regulating insurance under § 1144(b)(2)(A), it "must satisfy two requirements.  First, the state law must be

---

[3]  Both the motion judge and NYSA-ILA rest this issue on the determination of the court in Carducci v. Aetna U.S. Health, 247 F. Supp. 2d 596 (D.N.J. 2003), rev'd on other ground by Levine v. United Healthcare Corp., 402 F.3d 156 (3d Cir. 2005).  This reliance on Carducci is somewhat unnecessary, not because it considers an impermissible case, but because there exist adequate grounds in Perreira to establish that N.J.S.A. 2A:15-97 "relates to employee benefits."

specifically directed toward entities engaged in insurance. Second, as explained above, the state law must substantially affect the risk pooling arrangement between the insurer and the insured." Id. at 341-42 (internal citation omitted).

Fidelity argues the collateral source rule is not preempted because it falls within ERISA's saving clause; specifically, it is a law directed at the insurance agency. "It is well established in [the United States Supreme Court's] case law that a state law must be 'specifically directed toward' the insurance industry in order to fall under ERISA's saving clause; laws of general application that have some bearing on insurers do not qualify." Id. at 334 (citations omitted).

However, an examination of the statute itself indicates that it is more than an insurance regulation. The New Jersey Legislature did not define N.J.S.A. 2A:15-97 as an "antisubrogation law," nor did New Jersey place this statute among the statutes regulating insurance. The statute is entitled, "Personal injury or wrongful death actions; benefits from sources other than joint tortfeasor; disclosure; deduction from plaintiff's award," and is included in the portion of New Jersey's statutes dealing with civil actions. See generally N.J.S.A. 2A:15.

A-1152-18T1

The plain language of the statute reveals that this statute is not limited to regulating either health insurance or liability insurance providers. [4]

Based on the foregoing, the motion court properly found N.J.S.A. 2A:15-97 is preempted by ERISA. The final step, addressing the deemer clause, is thus unnecessary, as 29 U.S.C. § 1144(b)(2)(B) is only relevant if N.J.S.A. 2A:15-97 was not preempted. Notwithstanding that, we briefly address the third prong of the inquiry.

"[A] self-insured ERISA plan is not 'deemed' an insurance company and is thus exempt from state law regulating insurance by ERISA's 'deemer' clause." White Consol. Indus., Inc. v. Lin, 372 N.J. Super. 480, 484 (App. Div. 2004) (citing 29 U.S.C. § 1144(b)(2)(B)). Here, the motion judge found NYSA-ILA disability benefits are "wholly self-funded," hence, NYSA-ILA is not an insurance company and is exempt from state law regulating insurance. Fidelity asserts that while NYSA-ILA's disability benefits are self-funded, the other benefits are not.

---

[4] Moreover, the statute covers benefits received from any sources, not merely insurance. Woodger v. Christ Hosp., 364 N.J. Super. 144, 151 (App. Div. 2003) (citing Kiss v. Jacob, 138 N.J. 278, 282 (1994)) (noting N.J.S.A. 2A:15-97 covers benefits from employment contracts, worker's compensation acts, Federal Employers' Liability Act, gratuities, social security, welfare, and pensions under special retirement acts.).

In White Consol., the court discussed that a plan would not lose its self-funded status because it contracts with another company to provide administrative services, or because it purchases health and other insurance benefits for a limited class of non-New Jersey residents. 372 N.J. Super. at 486-87 (citing United Food & Commercial Workers & Emp'rs Ariz. Health & Welfare Tr. v. Pacyga, 801 F.2d 1157, 1162 (9th Cir.1986)). "As long as these other types of insured benefits are separate and distinct from the self-funded medical benefits provided under the [p]lan by [an employer] to its employees, the [p]lan remains an uninsured, self-funded welfare plan for ERISA preemption purposes." Id. at 487 (citing Pacyga, 801 F.2d at 1162). "[W]e hold that where, as here, the medical benefits in question are provided under an employer's fully self-funded employee health care plan, and other benefits purchased by an insurance policy are completely separate from those health benefits, then the plan is not deemed to be insurance for purposes of ERISA's insurance savings clause. . . ." Id. at 488 (citing 29 U.S.C. § 1144(b)(2)(A)).

White Consol. involved a fund that was partially self-funded and that also contracted for insurance. Id. at 484-85. That fund's plan included a reimbursement and subrogation provision allowing the fund to be reimbursed

for benefits paid to participants from third-party recoveries. Id. at 485. Here, the motion judge correctly reasoned:

> even if Fidelity . . . was correct that the collateral source rule is a law regulating insurance within the meaning of ERISA's saving[] clause, . . . [it] is irrelevant . . . because the particular benefits at issue in this case were self-funded and the deemer clause relieves the fund from the collateral source rule.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1152-18T1