959 A.2d 858 (2008)
403 N.J. Super. 518
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, Plaintiff-Respondent,
v.
HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, Defendant-Appellant, and
Anthony Cifelli, D.C. a/s/o Joseph Kutschman, Jr., Defendants.
DOCKET NO. A-0712-07T3.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 2008.
Decided November 3, 2008.
Edward S. Wardell, Haddonfield, argued the cause for appellant (Wardell, Craig, Annin & Baxter, L.L.P., attorneys; Mr. Wardell, Paul D. Kelly and Christine S. Orlando, on the brief).
Janet Zaorski Kalapos argued the cause for respondent (Leyden, Capotorto & Ritter, attorneys; Ms. Kalapos, on the brief).
Before Judges LISA, REISNER and ALVAREZ.
The opinion of the court was delivered by
REISNER, J.A.D.
The Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1 to -35, gives automobile owners the option of designating their health insurance, rather than the personal injury protection (PIP) provisions of their automobile insurance, as their primary coverage for injuries *859 sustained in automobile accidents. N.J.S.A. 39:6A-4.3d. If the insured makes this election, the PIP coverage functions as secondary insurance. Another statutory provision, N.J.S.A. 39:6A-5.1, provides for arbitration of PIP claims. This appeal presents the narrow issue whether a health insurer whose insured has designated the health insurance as primary under N.J.S.A. 39:6A-4.3d, is required to participate in arbitration of claims pursuant to N.J.S.A. 39:6A-5.1. We conclude that this statutory arbitration provision does not apply to health insurers. We therefore reverse a September 7, 2007 trial court order vacating an arbitration award against New Jersey Manufacturers Insurance Company (NJM) and requiring Horizon Blue Cross Blue Shield of New Jersey (Horizon) to participate in arbitration concerning a dispute over PIP benefits.

I
This case arises from the following facts. Pursuant to N.J.S.A. 39:6A-4.3d, Joseph Kutschman, Jr. designated his health insurer as his primary insurance for treatment of auto accident injuries. Thus, the PIP coverage provided by his auto insurer, NJM, was his secondary insurance. See N.J.A.C. 11:3-37.6 and -37.7. Kutschman was involved in an automobile accident on April 18, 2005. He received treatment from Dr. Anthony Cifelli, a chiropractor, from July 25, 2005 through October 31, 2005, and he assigned his right to PIP benefits to Dr. Cifelli. Following almost a one-year gap in treatment, Kutschman returned to Dr. Cifelli and received additional treatment from May 26, 2006 through October 18, 2006.
There is no dispute that NJM paid for Kutschman's care from April 18, 2005 through September 7, 2005. The initial dispute between the parties arose when NJM refused to pay for additional care because it was after "cut-off," meaning that the treatment was in excess of that which NJM had authorized.[1] NJM eventually paid for the treatment rendered through October 31, 2005, but refused to pay for the 2006 treatment. Therefore, on January 6, 2006, Dr. Cifelli filed a demand for arbitration pursuant to N.J.S.A. 39:6A-5.1, naming as respondents NJM and Blue Cross Blue Shield (Horizon). Horizon declined to participate in the arbitration. Dr. Cifelli later amended his arbitration demand to include additional treatments he had rendered to Kutschman in 2006.
NJM participated in the arbitration, initially submitting a June 14, 2006 pre-hearing letter raising the issue of medical necessity. In a December 21, 2006 pre-hearing submission to the arbitrator, NJM again contended that Dr. Cifelli's 2006 treatment was not medically necessary. However, NJM also contended that the claimant had not presented NJM with explanations of benefits (EOBs) showing what amounts Horizon had already paid.
The arbitrator conducted a hearing on January 17, 2007. At or shortly after the hearing, the arbitrator requested that Dr. Cifelli produce proof that he had submitted "the bills and Blue Cross EOBs [to NJM] *860 prior to filing the [arbitration] demand." On January 22, 2007, Dr. Cifelli's counsel responded that the doctor's office had sent his 2005 bills and the Horizon EOBs to NJM and had received payment for the treatments rendered through September 7, 2005. With respect to the 2006 treatments, he asserted that Horizon should be required to participate in the arbitration and "should be responsible for either paying the bills from May 26, 2006 through October 18, 2006 or at least providing EOBs for those dates so that NJM would pay them as per their contract." However, his letter did not indicate what if anything Dr. Cifelli or Kutschman had done to try to obtain those documents from Horizon.
The arbitrator rendered his decision on March 26, 2007. In the arbitration award, he addressed the following issues: whether Horizon was a proper party to the arbitration; whether the treatment rendered from May 26, 2006 through October 18, 2006 was reasonable, medically necessary, and causally related to the auto accident; whether the bills for treatments from July 25, 2005 through October 31, 2005 were "properly paid by NJM on July 30, 2006;" and, finally, "were the bills and EOB's from Horizon ... submitted to NJM prior to the filing of the demand for arbitration on January 12, 2006, entitling claimant to an award of counsel fees and costs?"
The arbitrator first concluded that N.J.S.A. 39:6A-5.1 did not require Horizon to participate in arbitration, because that section only mandated arbitration of disputes regarding "benefits [provided] under `personal injury protection coverage.'" He concluded that the claim against Horizon was for "health benefits under the Horizon plan" rather than for PIP benefits, and that disputes regarding Horizon benefits were "governed by the terms of [the Horizon] contract." Since that contract had not been submitted to the arbitrator, there was no proof that Horizon had ever agreed to arbitration of disputes over its coverage. Hence, he dismissed the claim against Horizon.
Next the arbitrator determined, based on the medical evidence submitted to him, that the treatment rendered from May 26, 2006 through September 22, 2006 was medically necessary. He denied the claim for treatment after September 22, 2006 due to "lack of documentation." He also concluded that "once respondent [NJM] has terminated benefits, claimant has no obligation to submit bills to NJM for payment." In other words, once NJM notified Dr. Cifelli that it would not pay any future claims because the treatment was not medically necessary, the doctor was not required to submit bills and EOBs to NJM before seeking arbitration, and Dr. Cifelli would not be precluded from obtaining counsel fees and costs if he prevailed on the medical necessity issue. Finally, the arbitrator noted that the parties "do not dispute" that NJM properly paid for the 2005 treatments on July 30, 2006.
Since the arbitrator decided that the 2006 treatments were medically necessary, he awarded counsel fees and costs to Dr. Cifelli. See Allstate Ins. Co. v. Sabato, 380 N.J.Super. 463, 473-74, 882 A.2d 972 (App. Div.2005). He also awarded Dr. Cifelli $4,950 for his medical fees. However, since Dr. Cifelli had not yet provided NJM with his bills and the EOBs from Horizon, the award was made "subject to the medical fee schedule, any remaining deductible and/or co-payment of [Kutschman], usual, customary and reasonable rates as determine by respondent (if applicable), and submission of the bills to NJM along with EOB's from Horizon."
On April 24, 2007, NJM filed a complaint seeking to vacate the arbitration award *861 and seeking a remand to the National Arbitration Forum for a new arbitration in which Horizon would be required to participate. In response, Horizon filed a certification attesting that Horizon was not Kutschman's insurer, although it licensed another entity, Highmark, to administer a self-funded group health benefit plan provided by Kutschman's employer. Horizon also contended that NJM's claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 to 1461, which precluded state regulation of self-funded insurance plans. Horizon's counsel further argued that Kutschman, or Dr. Cifelli, should have been required to pursue "all of the administrative remedies afforded by his employer benefit plan" before pursuing arbitration against NJM.
By order dated September 7, 2007, the Law Division judge vacated the arbitration award, remanded the matter to arbitration, and directed that Horizon participate. The judge construed N.J.S.A. 39:6A-5.1 as requiring arbitration of any dispute over insurance covering injuries sustained in an auto accident, whether it involved automobile or health insurance. He also based his decision on N.J.S.A. 39:6A-4.3d, which requires health insurers and auto insurers to coordinate benefits where the insured has designated the health insurer as primary. He reasoned that the statutory obligation to coordinate benefits also implied an obligation to participate in arbitration.

II
Because this case turns on an issue of law, our review of the trial court's decision is de novo. Manalapan Realty v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). That legal issue is limited to a health insurer's obligation, if any, to participate in statutory arbitration pursuant to N.J.S.A. 39:6A-5.1. No other issue is properly before us.[2]

A.
The narrowness of the issue that Horizon and NJM have placed before us was clarified at oral argument of this appeal. Both parties agreed that the insured was obligated to pursue any required administrative appeal process to obtain payment from the health insurer. That is, neither party contended that PIP arbitration was the appropriate forum to decide whether the health insurer should make payment under the provisions of the insured's health insurance policy and, if so, how much it should pay. NJM's counsel argued that, to coordinate benefits, NJM needed to see the health insurer's EOB in order to determine how much, if any, additional payment NJM would make beyond that paid by the health insurer. However, counsel did not explain, nor is there legally competent evidence in the record to document, why the health insurer would need to participate in the arbitration once it had issued its EOB.
Further, while arguing that health insurers should not be required to participate in PIP arbitration, Horizon's counsel asserted that in a PIP arbitration between an insured and an auto insurer, the arbitrator could order a health insurer to produce copies of its EOBs as a form of third-party discovery. He also contended that once the EOB was issued, there would be no need for arbitration at all, because the EOB explains what services the health insurer paid for, how much it paid, and why it declined to cover any of the services. From that information, the auto insurer could readily deduce whether its PIP policy *862 would allow additional payment for those services or whether it would provide coverage for any services for which the health insurer had declined to pay.[3]
From the arbitrator's decision, we can also readily determine that NJM's refusal to pay Dr. Cifelli's claim was not based on the absence of an EOB, but rather was premised on NJM's determination that the 2006 treatment was not medically necessary. Hence, the proofs at arbitration, and the arbitration award, focused on that issue.

B
We now turn to the statutory question before us. AICRA requires that automobile insurance policies include PIP coverage:
[E]very standard automobile liability insurance policy ... shall contain personal injury protection benefits for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustain bodily injury as a result of an [automobile] accident
[N.J.S.A. 39:6A-4.]
The same section defines PIP coverage as "[p]ayment of medical expense benefits in accordance with a benefit plan provided in the policy." N.J.S.A. 39:6A-4a. However, "[b]enefits payable under" section 4 are "subject to any option elected by the policyholder pursuant to [N.J.S.A. 39:6A-4.3]."
Section 4.3 in turn requires automobile insurers to offer insureds the option of designating their health insurance as the primary coverage for injuries that would otherwise be covered by the PIP portion of their auto insurance policies. If the insured chooses this option, the PIP coverage becomes secondary insurance, and the PIP insurer must coordinate benefits with the health insurer:
[Auto policies must offer] the option that other health insurance coverage or benefits of the insured, including health care services provided by a health maintenance organization and any coverage or benefits provided under any federal or State program, are the primary coverage in regard to medical expense benefits pursuant to section 4 of P.L.1972, c. 70 (C. 39:6A-4). If health insurance coverage or benefits are primary, an automobile insurer providing medical expense benefits under personal injury protection coverage shall be liable for reasonable medical expenses not covered by the health insurance coverage or benefits up to the limit of the medical expense benefits coverage. The principles of coordination of benefits shall apply to personal injury protection medical expense benefits coverage pursuant to this subsection[.]
[N.J.S.A. 39:6A-4.3d (emphasis added).]
AICRA, however, does not require a health insurer to cover individuals or treatment which is not normally covered under the applicable benefit contract or plan, and *863 an insured who chooses the section 4.3d option must provide the auto insurer with proof that he or she actually has applicable health insurance coverage. N.J.S.A. 39:6A-4.3f.
The Commissioner of Banking and Insurance (Commissioner) is mandated to adopt rules and regulations to effectuate the purposes of this section and may promulgate standards applicable to the coordination of personal injury protection medical expense benefits coverage. Ibid. The option to designate health insurance as primary coverage is reflected in N.J.A.C. 11:3-14.5. The Commissioner has also adopted a detailed set of regulations concerning the health insurance as primary option and the coordination of benefits between health insurers and auto insurers. N.J.A.C. 11:3-37.1 to -37.14.
In particular, N.J.A.C. 11:3-37.6 provides:
(a) When the named insured of an automobile policy has selected the PIP-as-secondary coverage option, all health benefits plans for which the insured is eligible shall provide coverage for the allowable expenses incurred by the insured due to an automobile-related injury prior to any benefits for medical expenses being paid by a PIP plan.
N.J.A.C. 11:3-37.7 then describes in detail how an auto insurer is to calculate the amounts it owes the insured after the health insurer has paid its portion of the claim:
(a) In calculating the actual benefits to be paid by the automobile insurer when the PIP-as-secondary coverage option has been selected, the automobile insurer shall first determine the amount of eligible expenses which would have been paid after application of the deductible and copayment limitations had the PIP-as-secondary coverage option not been selected.
1. In the event the remaining allowable expenses are less than the benefits calculated pursuant to (a) above, the automobile insurer shall pay actual benefits equal to the remaining allowable expenses, without reducing the remaining allowable expenses by its deductible or copayments.
2. In the event the remaining allowable expenses are greater than the benefits calculated pursuant to (a) above, the actual benefits paid by the automobile insurer shall be the benefits calculated pursuant to (a) above, without reducing the remaining allowable expenses by its deductible or copayments.
[N.J.A.C. 11:3-37.7(a).]
The regulations also detail how benefits are to be provided when PIP coverage is primary as well as when the insured is covered by more than one health insurance plan. N.J.A.C. 11:3-37.9. And the regulations address situations where there are disputes between health and auto insurers:
(a) If, subsequent to the selection of the PIP-as-secondary coverage option by the named insured, injuries are sustained by an insured eligible for health benefits plan coverage, but a dispute exists between the health benefits provider and the automobile insurer, then the health benefits provider shall provide benefit[s] as if it were the primary coverage provider and no PIP benefits were available to the insured. In no event shall the provision of benefits be unreasonably delayed by either a health benefits provider or an automobile insurer.

(b) If the health benefits provider asserts that it is not subject to N.J.A.C. 11:3-37.3, and thus, will not act as the primary coverage provider then the automobile insurer shall assume the role of primary coverage provider, and provide *864 its benefits in accordance with N.J.A.C. 11:3-37.8. The automobile insurer shall be entitled to recover premium reductions in accordance with N.J.A.C. 11:3-37.8(c).
[N.J.A.C. 11:3-37.11 (emphasis added).]
The Commissioner may impose penalties on auto or health insurers that violate the regulations. N.J.A.C. 11:3-37.13.
Against this regulatory backdrop, we turn to the central question of arbitration. AICRA provides that disputes over PIP benefits may be resolved through arbitration:
Any dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage pursuant to ... (C. 39:6A-4), ... (C. 39:6A-3.1) or ... (C. 39:6A-3.3) arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute, as hereinafter provided.
[N.J.S.A. 39:6A-5.1.]
Significantly, while this section refers to the benefits provided under PIP coverage pursuant to N.J.S.A. 39:6A-4, -3.1 and -3.3, which address auto insurance PIP benefits, it makes no reference to benefits provided under -4.3d, the section addressing health insurance.
The Commissioner has adopted regulations to implement section 5.1. The definitions section of the regulations makes clear that they apply to auto insurance, and does not mention either health insurance or section 4.3d:
(a) The purpose of this subchapter is to establish procedures for the resolution of disputes concerning the payment of medical expense and other benefits provided by the personal injury protection coverage in policies of automobile insurance. This subchapter implements N.J.S.A. 39:6A-5.1 and 5.2, which provide that PIP disputes shall be resolved by binding alternate dispute resolution as provided in the policy form approved by the Commissioner....
(b) This subchapter shall apply to disputes arising under policies of private passenger automobile insurance, on either a personal lines or commercial lines policy form, that provide medical expense benefits and other benefits under personal injury protection coverage, as follows:
1. PIP benefits under a standard automobile insurance policy pursuant to N.J.S.A. 39:6A-4;
2. PIP benefits under a basic automobile insurance policy pursuant to N.J.S.A. 39:6A-3.1;
3. PIP benefits provided by the [Unsatisfied Claim and Judgment Fund] pursuant to N.J.S.A. 39:6-86.1; and
4. Additional PIP benefits provided pursuant to N.J.S.A. 39:6A-10.
[N.J.A.C. 11:3-5.1 (emphasis added).]
These provisions support our conclusion that neither the statute nor the implementing regulations contemplate that arbitration under N.J.S.A. 39:6A-5.1 will include health insurers.
NJM argues that the term "personal injury protection coverage" in N.J.S.A. 39:6A-5.1 should be construed consistent with the definition of that term contained in N.J.S.A. 39:6A-4, which in turn defines PIP coverage as meaning "[p]ayment of medical expense benefits in accordance with a benefit plan provided in the policy." Although, taken in context, this section plainly refers to automobile policies, NJM reasons that since auto insurance plans must offer insureds the option of choosing to designate their health insurance as primary, the health insurance should be considered *865 as part of the "benefit plan provided" by the auto insurance policy. We disagree.
It is clear even from section 4 that under AICRA, health insurance is an alternative to, and not part of, PIP coverage. In fact, after defining what coverage an auto insurer must provide, section 4 states that "[b]enefits payable under this section shall... [b]e subject to any option elected by the policyholder pursuant to [N.J.S.A. 39:6A-4.3]." N.J.S.A. 39:6A-4(1) (emphasis added). If the Legislature intended health benefits to be considered as part of PIP coverage, one would expect this section to provide that PIP benefits "include" health coverage. Our conclusion is supported by the agency's regulations, which provide that "`PIP' means personal injury protection coverage provided as part of an automobile insurance policy." N.J.A.C. 11:3-37.2 (emphasis added).
In addition to adopting regulations governing arbitration of PIP claims, the Commissioner of Banking and Insurance has adopted comprehensive regulations governing the resolution of disputes between health insurers and their insureds over denial of claims and other issues. See N.J.A.C. 11:24-8.5, -8.6; N.J.A.C. 11:24A-3.5.[4] Because the agency has rules explicitly addressing disputes over health insurance claims, we will not infer that the agency intended its PIP arbitration regulations to apply to health insurers, particularly when the PIP regulations do not specifically include those insurers. Moreover, once a health insurer's payment obligation has been determined through the regulatory appeals process, its participation in PIP arbitration would seem completely unnecessary since the PIP regulations explicitly govern how the auto insurer is then required to calculate its own payment obligation. See N.J.A.C. 11:3-37.7(a). Construing all of the relevant sections of AICRA in pari materia, see State Farm Mut. Auto. Ins. Co. v. Molino, 289 N.J.Super. 406, 409-10, 674 A.2d 189 (App. Div.1996), and considering the agency's implementing regulations, we conclude that the arbitration provisions of N.J.S.A. 39:6A-5.1 do not apply to health insurers.[5]
On the facts of this case, we also find no basis to disturb the arbitrator's decision that NJM must pay the 2006 claims, subject to receipt of EOBs from Horizon. Contrary to NJM's contentions on this appeal, it refused to pay Dr. Cifelli's bills because an IME revealed the treatment was not medically necessary, and not because the doctor had failed to submit EOBs from a health insurer. Dr. Cifelli was entitled to a prompt resolution of the medical necessity issue, which the arbitrator appropriately provided. See Molino, supra, 289 N.J.Super. at 410, 674 A.2d 189 (acknowledging "our firm policy favoring prompt and efficient resolution of PIP disputes without resort to the judicial process"). Moreover, while Dr. Cifelli named Horizon as a party to the arbitration, the history of his or Kutschman's claims to Horizon is not in the record and there is no basis to infer that either he or Kutschman cannot obtain the EOBs through the health insurance dispute resolution process. Nor is there any suggestion in this *866 record that Dr. Cifelli and NJM are likely to have further disagreements over NJM's obligations once the EOBs are obtained.
Reversed.
NOTES
[1] The record contains several "decision point review plans" from NJM indicating that NJM pre-authorized a series of chiropractic treatments for Kutschman. However, in September 2005, NJM refused to authorize any more treatments pending an independent medical examination (IME). After getting the IME report, opining that additional treatment would not be beneficial, NJM refused to pay for further chiropractic care. See N.J.A.C. 11:3-4.2 (defining "decision point" and "precertification"); Coal. for Quality Health Care v. N.J. Dep't of Banking & Ins., 348 N.J.Super. 272, 284-88, 791 A.2d 1085 (App.Div.), certif. denied, 174 N.J. 194, 803 A.2d 1165 (2002).
[2] In deciding this case, we acknowledge that one of the interested parties, Dr. Cifelli (and by inference, the insured Mr. Kutschman) is not before us, having declined to file a brief.
[3] It appears from the arbitrator's decision that the participating parties, Dr. Cifelli and NJM, agreed that the insured (or in this case the insured's assignee) must produce the health insurer's EOBs in order to obtain payment from the auto insurer. At oral argument, NJM suggested that its interest in pursuing this appeal stems from the difficulty insureds in Kutschman's position are having in obtaining timely payment (and timely issuance of EOBs) from their health insurers. We have no factual record concerning this issue, and in any event, it would be most appropriately addressed by the Commissioner of Banking and Insurance, who has regulatory jurisdiction over both health and auto insurers. Accordingly, we note the issue here for the Commissioner's consideration.
[4] As noted earlier, at oral argument, both NJM and Horizon agreed that an insured should be required to pursue these dispute resolution mechanisms to determine the health insurer's payment obligation.
[5] In light of that conclusion we need not address Horizon's ERISA pre-emption arguments. Nor will we consider NJM's contention that N.J.S.A. 2A:23A-18b barred Horizon from appealing the Law Division order, even though Horizon never agreed to arbitration, since NJM withdrew that point at oral argument.