NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2830-19

PALISADES INSURANCE
COMPANY,

     Plaintiff-Appellant,

v.

HORIZON BLUE CROSS
BLUE SHIELD OF NEW
JERSEY,

     Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

July 27, 2021

APPELLATE DIVISION

Argued May 26, 2021 – Decided July 27, 2021

Before Judges Alvarez, Geiger, and Mitterhoff.

On appeal from the Superior Court of New Jersey,
Law Division, Middlesex County, Docket No.
L-6136-19.

Glenn D. Curving argued the cause for appellant
(Riker Danzig Scherer Hyland & Perretti, LLP,
attorneys; Glenn D. Curving, of counsel; Anne M.
Mohan and Alfonse R. Muglia, on the briefs).

Adam J. Petitt argued the cause for respondent
(Stradley Ronon Stevens & Young, LLP, attorneys;
Adam J. Petitt, of counsel; Robert J. Norcia, on the
brief).

The opinion of the court was delivered by

MITTERHOFF, J.A.D.

In this personal injury protection (PIP) reimbursement case, plaintiff Palisades Insurance Company appeals from a February 28, 2020 order granting defendant Horizon Blue Cross Blue Shield of New Jersey's motion for summary judgment and dismissing its complaint with prejudice. Having reviewed the record and considering the applicable law, we affirm.

I.

Plaintiff is an insurance carrier that sells automobile insurance policies including mandatory PIP benefits, which provide payment to its insureds, or medical providers as assignees of its insureds, for treatments of injuries sustained in motor vehicle accidents. Defendant is a not-for-profit corporation providing health insurance benefits to its insureds. Pursuant to N.J.S.A. 39:6A-4.3(d), plaintiff allows its customers to designate their health insurer as primary for payment of medical expenses incurred as a result of an automobile accident.

Plaintiff's insureds M.B, M.T., T.L., and P.M opted to designate defendant to provide medical coverage on a primary basis. Each insured was involved in an automobile accident and received treatment. Despite the designation, each insured and/or their provider sought payment of their

medical expenses from plaintiff. With regard to M.B, M.T., and T.L, plaintiff sent letters notifying defendant that its subscribers had submitted expenses related to injuries sustained during motor vehicle accidents, and that under the terms of their policies, defendant was the primary provider of medical benefits. Plaintiff requested confirmation that it would process the claims. After defendant failed to respond to the letters, plaintiff voluntarily paid the claims of M.T., T.L., and M.B.

In P.M.'s case, plaintiff commenced payment upon receipt of the claim. It subsequently realized that the insured had selected the health care as primary designation on their auto policy. P.M. requested confirmation from defendant that it would provide primary coverage for their automobile accident-related injuries. Defendant responded with a letter indicating that the insured's contract permitted only secondary coverage for PIP-eligible expenses. That prompted P.M.'s medical provider to send plaintiff a letter requesting that the insured's coverage designation be changed to PIP as primary. Plaintiff then provided primary coverage for the remaining expenses.

Plaintiff filed a complaint on August 28, 2019, and an amended complaint on September 5, 2019, requesting reimbursement under a theory of subrogation for the medical expenses it paid on behalf of its insureds. Defendant filed an answer on October 9, 2019, but did not respond to a number

of ensuing discovery requests. On December 4, 2019, defendant moved for summary judgment and requested that sanctions be imposed against plaintiff's counsel, alleging the amended complaint was frivolous.

In support of its motion, defendant argued that before plaintiff filed this complaint, it had unsuccessfully sought reimbursement in at least ten other cases that presented identical legal questions. In each lawsuit, as here, plaintiff argued that: (1) the insureds elected to have their health insurer act as the primary provider of medical expenses related to automobile accidents, (2) the insureds were enrolled in a health benefits plan provided by defendant; and (3) plaintiff paid PIP benefits to health care providers, despite knowing their policies provided only secondary coverage. In each case, plaintiff argued it had a right to reimbursement under a theory of subrogation, and lost.

On the return date of the motion for summary judgment, defendant argued that the statutory and regulatory schemes which govern the payment of automobile accident-related expenses amongst PIP and health insurers, do not provide any right of recovery to PIP insurers that voluntarily pay claims they are not liable for. Plaintiff contended that the payments were not voluntary because they were made only after its requests for confirmation that the insureds held policies with defendant went unanswered. Because the coverage status of the insureds and whether defendant properly processed their claims

4                                                          A-2830-19

remained in dispute, plaintiff argued summary judgment was improper. At the conclusion of the hearing, the judge granted defendant's motion and dismissed plaintiff's amended complaint with prejudice. Sanctions were not imposed. This appeal ensued.

II.

"We review a grant of summary judgment de novo, applying the same standard as the trial court." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

Self-serving assertions that are unsupported by evidence do not give rise to a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015) (quoting Heyert v. Taddese, 431 N.J. Super. 388, 414 (App. Div. 2013)). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l

5

Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)).  We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment."  Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995).

A.

Plaintiff argues the motion judge erred in concluding that subrogation does not exist as to PIP-to-health insurer reimbursement claims.  It acknowledges that the New Jersey Automobile Reparations Reform Act (No-Fault Act), N.J.S.A. 39:6A-1 to -35, does not expressly permit inter-company reimbursements amongst PIP and health insurers, but contends the insurance industry has developed a practice, which defendant refuses to honor, of voluntarily providing reimbursements when overpayments are made.  Further, plaintiff alleges that the No-Fault Act simply does not contemplate a situation where a health insurer refuses to acknowledge or address a dispute.  This puts PIP insurers between a rock and a hard place in that PIP providers are subject to penalties if prompt payments are not made.  Accordingly, plaintiff suggests the No-Fault Act does not preclude health insurance-to-PIP reimbursement, and it should be permitted to proceed with its claim.

A-2830-19

B.

Prior to 1972, "insurers were free to file suit against other insurers to recover payments for medical expenses based on the common-law right of subrogation." State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch., 146 N.J. 1, 6 (1996). That created, however, "an inefficient means of compensation since it required expensive and time-consuming litigation, and . . . would not compensate drivers whose own fault caused their injuries." Ibid. (quoting Garden State Fire & Cas. Co. v. Com. Union Ins. Co., 176 N.J. Super 301, 305 (App. Div. 1980)).

In response, the Legislature enacted what has become colloquially known as No-Fault. Under No-Fault, automobile insurers are required to provide PIP coverage to their insureds, without consideration of fault, and are prohibited from asserting subrogation claims seeking reimbursement of medical expenses against the at-fault insured's PIP provider. Liberty Mut. Ins. Co. v. Penske Truck Leasing Co., 459 N.J. Super. 223, 229-30 (App. Div. 2019).

In 1990, No-Fault was amended to allow insureds to choose to have their health insurer primarily responsible for paying medical expenses arising out of automobile accidents. N.J.S.A. 39:6A-4.3(d). Choosing the health care insurance-as-primary option reduces the insured's car insurance premiums.

A-2830-19

N.J.S.A. 39:6A-4.3(f). Health insurers, in turn, are prohibited from including any provision in their plans which "restricts, limits, or excludes coverage" of expenses arising out of automobile accidents. N.J.A.C. 11:3-37.3 (d). There are, however, exceptions to the general rule against PIP restrictions, such as self-funded health plans under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 to -1461. See 29 U.S.C. § 1144(b)(2)(B); FMC Corp. v. Holliday, 498 U.S. 52, 61 (1990); White Consol. Indus., Inc. v. Lin, 372 N.J. Super. 480, 483-84 (App. Div. 2004).

To facilitate the orderly resolution of insurance claims arising from automobile accidents, the New Jersey Department of Banking and Insurance implemented the Coordination of Benefits (COB) scheme under N.J.A.C. 11:3-37.1 to -37.14. Those regulations establish a system by which PIP and health insurers determine which expenses are covered by the respective plans, and how much each is obligated to pay. When a dispute arises regarding the obligations of a PIP insurer and a health insurer, N.J.A.C. 11:3-37.11 provides:

> (a) If, subsequent to the selection of the PIP-as-secondary coverage option by the named insured, injuries are sustained by an insured eligible for health benefits plan coverage, but a dispute exists between the health benefits provider and the automobile insurer, then the health benefits provider shall provide benefit as if it were the primary coverage provider and no PIP benefits were available to the insured. In no event shall the provision of benefits be unreasonably

delayed by either a health benefits provider or an automobile insurer.

(b) If the health benefits provider asserts that it is not subject to N.J.A.C. 11:3–37.3, and thus, will not act as the primary coverage provider then the automobile insurer shall assume the role of primary coverage provider, and provide its benefits in accordance with N.J.A.C. 11:3–37.8. The automobile insurer shall be entitled to recover premium reductions [from the insured] in accordance with N.J.A.C. 11:3–37.8(c).

## C.

No-Fault requires PIP insurers to make prompt payment of claims. Under N.J.S.A. 39:6A-5(g), PIP payments "shall be overdue if not paid within [sixty] days after the insurer is furnished with written notice of the fact of a covered loss and of the amount of the same." If a PIP insurer provides secondary coverage, however, the duty to provide primary coverage arises only after it has received notice that the health insurer has determined it will not act as the primary. N.J.A.C. 11:3-37.11(b).

When a PIP-as-secondary insurer receives a claim eligible for primary coverage, it must deny coverage and send the insured a notice advising them to submit the claim to their health insurer. See N.J. DEP'T OF BANKING AND INS., BULL. NO. 05-25, (Dec. 5, 2007) [hereinafter Bull. No. 05-25] ("The claimant's private passenger automobile insurer should notify the insured, and any of the insured's health care providers known to the automobile insurer, that the

insured or provider should first submit the claim to the appropriate health plan for coverage. . . .").[1]

Health insurers are also required to make prompt payment of claims, but are governed by N.J.A.C. 11:22-1.1 to -1.16.  Specifically, N.J.A.C. 11:22-1.5 requires health insurers to pay claims within thirty calendar days of receipt if submitted electronically or forty calendar days if submitted by other means.  A health insurer's duty to pay does not arise until it has received a claim directly from the insured or a healthcare provider.  See N.J.A.C. 11:22-1.5(a); Bull. No. 05-25 ("The time periods for the prompt payment of claims by health plans set forth at [N.J.A.C.] 11:22 should not begin until the health plan has received the claim directly from the insured or the provider.").  A PIP or health insurer's failure to comply with the COB subchapter "may result in the assessment of any and all penalties in accordance with the laws of this State." N.J.A.C. 11:3-37.13.

Reimbursements of payments incorrectly made by auto carriers are permitted by inter-company agreement or arbitration amongst PIP insurers, N.J.S.A. 39:6A-11, but this court has determined that health insurers are not subject to PIP arbitration.  See N.J. Mfrs. Ins. Co. v. Horizon Blue Cross Blue Shield of N.J., 403 N.J. Super. 518, 528 (2008) (finding "neither the statute nor

_____

[1]  Available at:  https://www.state.nj.us/dobi/bulletins/blt05_25.pdf

the implementing regulations contemplate that arbitration under N.J.S.A. 39:6A-5.1 will include health insurers").

Consequently, the No-Fault statutes do not provide an enforcement mechanism that PIP carriers may use against health insurers. Rather, the COB regulations are enforced by the Commissioner of Banking and Insurance through the assessment of penalties. N.J.A.C. 11:3-37.13. Moreover, the COB scheme depends upon PIP insurers to deny claims falling under primary coverage, in order to notify the healthcare providers that the expenses must be submitted to the health insurer for payment. See Bull. No. 05-25. When a PIP carrier voluntarily pays a claim it is only secondarily liable for, the COB scheme breaks down, in that the provider remains unaware that the claim was improperly submitted, removing any incentive for the provider to pursue the health insurer.

## D.

Prior to the enactment of the No-Fault law, subrogation claims amongst automobile insurers were permitted. "Subrogation is a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it [and] . . . to serve the interests of essential justice between the parties." Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171 (1954) (citations omitted).

11

In the insurance context, subrogation is a doctrine allowing the insurer to seek recovery from the party at fault, exercised after the insurer has indemnified its insured under the terms of an insurance policy. The doctrine is based on the principle that a benefit has been conferred upon the insured at the expense of the insurer and vests in the latter any rights the former may have had against a third party who is liable for the damages.

[City of Asbury Park v. Star Ins. Co., 242 N.J. 596, 604 (2020) (quoting George J. Kenny et al., New Jersey Insurance Law § 8-2, at 231-32 (2019) (citations omitted)).]

"[T]he insurer 'steps into the shoes of the insured,' Pellecchia, 15 N.J. at 172, and files suit against the tortfeasor subject to any 'defenses which would defeat recovery by the [insured].'" Id. at 605. (second alteration in original) (quoting Hartford Fire Ins. Co. v. Riefolo Constr. Co., Inc., 81 N.J. 514, 524 (1980)). The right to subrogate, however, does not "arise spontaneously" and is not "free-floating or open-ended." Culver v. Ins. Co. of N. Am., 115 N.J. 451, 456 (1989). It requires:

"(1) an agreement between the insurer and the insured, (2) a right created by statute, or (3) a judicial 'device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it.'" While the doctrine has an equitable foundation, the attitude of courts toward subrogation has been described as "one of allowing complete freedom of contract and trying to determine and enforce the expressed intention of contracting parties."

12

> [Ibid. (citations omitted) (first quoting Aetna Ins. Co.
> v. Gilchrist Brothers, Inc., 85 N.J. 550, 560 (1981));
> and then quoting Robert E. Keeton et al., Insurance
> Law, § 3.10 at 153 (1988).]

III.

Plaintiff argues defendant's failure to respond to letters, advising it had received claims subject to primary coverage by the health insurance company, should require it to pay the claim. A health insurer's duty to process a claim, however, does not arise until it has received a request for payment directly from the insured or a healthcare provider. N.J.A.C. 11:22-1.5(a); Bull. No. 05-25. If, after proper submission, a health insurer disputes coverage of a requested medical expense, the insured must pursue the internal appeals process under the plan. N.J.A.C. 11:22-1.10(a)(2) ("A provider shall initiate an appeal by submitting to the health carrier or its agent a complete Claim Payment Appeal Form, which shall include all substantiating documentation required by the health carrier or its agent."). Where both the PIP and health insurer dispute coverage, the health insurer becomes obligated to act as the primary. N.J.A.C. 11:3-37.11(a).

With regard to M.B, M.T., and T.L., plaintiff's letters did not require defendant to act. While acknowledging defendant's disregard of plaintiff's notice attempts, nothing under the No-Fault or COB laws required defendant to respond, or process the alleged claims, until they were properly submitted.

13

As to P.M., the communications between the insured, their healthcare provider, and the parties served as notice that defendant was asserting it was not subject to N.J.A.C. 11:3-37.3, and would not act as the primary insurer. N.J.A.C. 11:3-37.11(b). At that point, plaintiff became obligated to provide primary coverage despite the insured's designation. Ibid. Its recourse is not reimbursement from defendant, rather, it is to recover the premium reductions the insured saved by electing health as primary on their auto policy. Ibid. If plaintiff believed that defendant unreasonably denied coverage, it could have requested that P.M. pursue defendant's internal appeals process, or obtained an assignment of rights from the insured and pursued the appeal itself. Instead, it simply paid the claim. Consequently, plaintiff has failed to establish any right of subrogation. Culver, 115 N.J. at 456. It has not provided an assignment of rights executed by any of its insureds, no statutory right to subrogation exists under No-Fault, and plaintiff has failed to demonstrate that defendant engaged in any culpable conduct. Plaintiff may seek reimbursement from the healthcare providers it paid out of turn, or it must obtain an assignment of its insureds' rights. It may not recover the funds it paid toward expenses eligible for primary coverage directly from defendant.

Plaintiff next argues that the motion judge erred, both legally and factually, in finding the payments it made were voluntary. Legally, it suggests

that because the voluntary payment doctrine has never been applied to inter-insurer reimbursement, the doctrine should not be applied here. Factually, plaintiff contends the payments were not voluntary, because they were made under threat of sanctions for failure to provide prompt payment. We disagree.

Initially, we note that plaintiff has not presented any legal authority that persuades us the voluntary payment doctrine is inapplicable in a health-insurer-to-PIP reimbursement case. Rather, "[i]t long has been the general common-law rule that where a party, without mistake of fact, fraud, duress, or extortion, voluntarily pays money on a demand that is not enforc[ea]ble against him [or her], he [or she] may not recover it." Cont'l Trailways, Inc. v. Dir, Div. of Motor Vehicles, 102 N.J. 526, 548 (1986).

Here, there was no mistake of fact because the insureds' designation of health-as-primary on their policies provided plaintiff with notice that it was not obligated to pay the subject claims. Plaintiff does not allege fraud or duress. Instead, it contends it paid the claims under threat of penalty for failure to provide prompt payment. A PIP-as-secondary insurer's duty to pay automobile-accident-related medical expenses, however, does not arise until it receives notice that the primary insurer has determined the claim is not covered. N.J.A.C. 11:3-37.11(b). Any payment made in fear of penalties was made under a mistake of law, because plaintiff had not received the duty-

15

triggering notice, and was under no obligation to pay. Reimbursements are not appropriate when voluntary payments are made based on a mistake of law. Cont'l Trailways, Inc., 102 N.J. at 548. The judge's finding that the payments were voluntary was sound, both legally and factually.

Plaintiff also contends that summary judgment was prematurely granted in this case because factual disputes existed as to whether the named insureds were defendant's policy holders, how defendant processes its claims, defendant's alleged past practice of seeking reimbursements from PIP insurers, and the reasons defendant failed to respond to its letters. The sought-after discovery, however, is incapable of curing the fundamental legal obstacle for plaintiff: that no cause of action for subrogation exists to allow a PIP carrier to pursue reimbursement for claims mistakenly paid out of turn.

To the extent not addressed, plaintiff's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                                    A-2830-19